UNITED STATES of America, Plaintiff-Appellee,

v.

Larry Lee BRANNON, Defendant-Appellant.

Nos. 75–4124, 75–4275.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1977.

Rehearing and Rehearing En Banc March 11, 1977.

James A. Molans, Martin Blitstein, Miami, Fla., for appellant.

Ronald T. Knight, U.S. Atty., Macon, Ga., for appellee.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellant was charged with conspiring with four other individuals to possess and distribute cocaine in violation of 21 U.S.C. § 846 (1970). He was convicted and sentenced to ten years imprisonment and a fifteen year special parole term.[1] During the course of the trial appellant was also summarily cited for criminal contempt un-

---

1. The other four conspirators, Raymond Soehner, John Hollowell, Phillip McRae and Robert Campbell, pled guilty and were sentenced to terms of imprisonment.

der Fed.R.Crim.P. 42(a) and sentenced to six months imprisonment. He has appealed the conspiracy conviction, contending that the trial judge erred in (a) restricting his cross-examination of. a government witness, (b) refusing to grant a continuance until a defense witness arrived, (c) ordering appellant to answer certain questions on cross-examination, and (d) instructing the jury that appellant's refusal to answer could be considered in assessing appellant's credibility. Appellant has also appealed his contempt citation on the ground that it was beyond the trial judge's power under Rule 42(a).[2] We affirm the conspiracy conviction, finding appellant's contentions to be without merit, but reverse the contempt citation.

### Proceedings Below

The government's evidence demonstrated a conspiracy beginning in December 1974 when co-defendant Raymond Soehner met with the appellant in the latter's home in Gainesville, Florida, and discussed the possibility of acquiring cocaine from him for resale. They agreed that when Soehner had a buyer he would call the appellant and arrange to pick up the cocaine. Later, Soehner would pay appellant out of the proceeds of the sale.

Three sales were made pursuant to this agreement: the first in January or February 1975 involved three ounces, the second in June 1975 involved ten ounces, and the third in July 1975 involved two pounds. On each occasion Soehner met the appellant alone and then rendezvoused with co-defendant John Hollowell for a trip to Macon, Georgia. There they met co-defendants Phillip McRae and Robert Campbell who purchased the cocaine. After the first two transactions, Soehner and Hollowell returned to Florida, and Soehner then paid appellant. However, the July transaction was disrupted when undercover agents, posing as buyers, accompanied McRae and Campbell and attempted to arrest the con-

spirators as the sale was consummated. The agents succeeded in arresting only Soehner, though, and the other three escaped with the money. Subsequently, the money was relayed to Soehner's roommate, David Wilson, in Gainesville, and Wilson passed it to appellant in a prearranged meeting at a theatre.

The appellant took the stand and on direct examination disclaimed any involvement in the alleged conspiracy. He also denied that he ever sold any cocaine to Soehner. On cross-examination, however, when the prosecutor was probing his relationship with Soehner, appellant admitted that on occasion he had purchased small quantities of cocaine from Soehner. The prosecutor followed up on this admission by asking how much cocaine appellant had ever possessed, but before he could answer his counsel objected. After a lengthy colloquy the prosecutor altered his question and was permitted to ask whether or not between December 1974 and the end of August 1975 the appellant had ever possessed a quantity of cocaine greater than three grams. The appellant initially refused to answer the question on fifth amendment grounds, but when the court ordered him to answer, he responded in the affirmative. He was then asked whether he had ever taken the cocaine with him when he traveled. Again, appellant refused to answer. The court instructed him to answer the question, and when he persisted in his refusal the court said: "All right. The jury will be the judge of his credibility and they will take that into consideration." Then on redirect, the following exchange occurred:

Q When you got that cocaine, Larry, did you keep it with the intention to distribute it?

A No sir.

Q Did you every distribute it?

A No sir.

THE COURT: Mr. Witness, back up and answer the question the District Attorney asked you. Did you ever take that

2. The two appeals were consolidated pursuant to Fed.R.App.P. 3(b) and Fifth Circuit Local Rule 10(a)(9).

cocaine away from the premises where you resided during the period of time you had it.

THE WITNESS: I refuse to answer that question, Your Honor.

THE COURT: You can't refuse. You just told your lawyer that you did not have it with the intent to distribute it. The District Attorney's question, whether or not you ever removed it from your premises is encompassed by that question. You can't tell your lawyer that you didn't have it to distribute and tell the District Attorney that you are going to refuse to answer his question.

THE WITNESS: I refuse to answer that question, Your Honor.

THE COURT: You refuse to answer it?

THE WITNESS: Yes sir.

THE COURT: All right. The Court will take that up at a subsequent time. You ladies and gentlemen have heard it, and you may consider his response.

At the conclusion of appellant's testimony his counsel advised the court at sidebar that he had an additional witness, an attorney from Gainesville, Florida, who was due to arrive on a chartered flight in forty-five minutes. It was represented that his testimony would impeach Soehner's testimony of the previous day concerning whether Soehner, while under post-arrest questioning by government agents, had implicated appellant in the drug dealings. Counsel's request for a continuance was refused, the Court noting that the witness was not under subpoena and that in any case the defense had had a full day to arrange for his appearance.

Counsel then proceeded to deliver their closing arguments, after which the jury was excused for the day. With the jury absent, the court commenced to dictate into the record an order holding appellant in contempt. The court recounted the circumstances surrounding the appellant's refusal to answer questions on cross-examination

earlier in the afternoon and stated that this had been contumacious conduct. The court concluded by holding appellant in contempt and sentencing him to twelve months imprisonment. The appellant had not been forewarned that the court considered his conduct to be contumacious or that he would be held in contempt if he continued to refuse to answer the questions put to him. Nor did the Court afford appellant or his counsel any opportunity to be heard when the criminal contempt was adjudged and sentence was imposed. The next day the sentence was reduced to six months.[3]

### The Cocaine Conspiracy Case

■ We have carefully examined the record and the occasions when appellant claims that the trial judge impermissibly limited his cross-examination of government witnesses. The questions his counsel sought to have answered were facially irrelevant; and appellant has failed both in the trial court and on appeal to demonstrate how they might relate to the issues in the case. Thus, we find no error in the limitations the trial court imposed.

■ Appellant also claims that the trial court erred in refusing to grant a continuance to allow for the anticipated late arrival of the impeachment witness, an attorney who had formerly represented appellant. We have previously held that "[t]he denial of a continuance to obtain witnesses is not an abuse of discretion where diligence has not been exercised to compel their attendance or where there is no adequate showing that substantial favorable evidence would be tendered." *United States v. Roca-Alvarez*, 451 F.2d 843, 847 (5th Cir. 1971). *See also United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976). Neither of these criteria has been met here. No attempt was made at any time to subpoena the witness, and no explanation was given as to why the defense had been unable to produce him during the preceding twenty-four hours. Moreover, it cannot be said that the testi-

---

**3.** The court reduced the sentence when counsel brought to its attention the case of *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), which limits the sentence that can be imposed for summary contempt to a period of six months.

mony of the attorney from Gainesville would have constituted "substantial favorable evidence." The issue appellant sought to raise was whether Soehner had disclosed appellant's identity to the government agents while he was in custody or after he was admitted to bail. On cross-examination, Soehner testified that he had voluntarily given appellant's name to the agents while in custody. The attorney, according to the proffer, would have related a conversation he had with Soehner in which Soehner stated that appellant's name was not given to the agents until he had been released on bond and learned that David Wilson had already implicated appellant. Admittedly, the inconsistency appellant describes would certainly have had some impeachment value, but it does not amount to "substantial" evidence. The attorney's testimony bears only on a purely collateral matter and leaves other very damaging testimony totally undisturbed.

Appellant next claims that the court erred in ordering him to answer certain questions about his possession and use of cocaine and also erred in instructing the jury that it could consider appellant's refusals to answer in assessing his credibility. He argues that, as there were charges pending against him in Florida for possession of cocaine, the fifth amendment[4] prohibited the prosecutor from asking him any questions on cross-examination that might require him to incriminate himself on those charges. As for the trial court's ruling that he had waived his fifth amendment privilege by electing to take the witness stand, the appellant claims that he did not waive the privilege by testifying, that he could assert it any time, and that no adverse inference could be drawn from his "selective assertion" of his right not to incriminate himself. Moreover, as the indictment alleged a conspiracy "continuing to and in-

cluding on or about July 25, 1975," appellant argues that the prosecutor's question concerning whether he had ever possessed over three grams of cocaine between December 1974 and the end of August 1975 was improper because it included the month of August, a time not encompassed by the indictment.

■ The fifth amendment contentions are totally without merit. As was said in *Johnson v. United States,* 318 U.S. 189, 195, 63 S.Ct. 549, 552, 87 L.Ed. 704, 710 (1943):

The case of an accused who voluntarily takes the stand and the case of an accused who refrains from testifying . . are of course vastly different. *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. His "voluntary offer of testimony upon any fact is a waiver as to all other relevant facts, because of the necessary connection between all." 8 Wigmore, Evidence (3d ed., 1940) § 2276(2) . . .

*See also Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047, 1051 (1968). Thus, once appellant voluntarily took the witness stand in his own defense, he waived his fifth amendment right and became obligated, as any other witness, to answer all relevant questions.[5] The inquiry here is not, therefore, whether the appellant asserted a valid fifth amendment claim, for he did not; rather the only real issue is whether the questions propounded to him were within the scope of permissible cross-examination.

■ We conclude that the disputed questions were indeed proper. On direct examination the appellant had testified at length to his relationship with Soehner, and he categorically denied any role in the conspiracy. It was entirely appropriate in light of this testimony for the prosecutor to probe appellant's relationship with Soehner and his claim that he was Soehner's customer

---

4. The amendment provides in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

5. *See Bendelow v. United States,* 418 F.2d 42, 47–48 (5th Cir. 1969); *United States v. Pledger,*

409 F.2d 1335, 1336 (5th Cir. 1969). *But cf. Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Defendant's post-arrest silence after having been given *Miranda* warnings cannot be used to impeach his exculpatory story given in trial testimony).

rather than supplier. Moreover, it was also relevant to inquire into the circumstances of his possession and use of the cocaine he admitted receiving from Soehner. At no point was the inquiry pursued so as to require appellant to testify as to whether he possessed cocaine or committed any other crime after the period of the indictment.[6] Under these circumstances we can find no fifth amendment violation.

■ The only remaining issue is whether the jury was properly instructed on how to consider appellant's refusals to answer the disputed questions. The trial judge advised the jury that such refusals could be considered in assessing appellant's credibility. Appellant claims this was error, that even if the fifth amendment privilege was improperly invoked no adverse inference should be drawn from its assertion. It is apparent, however, · that appellant has mistakenly placed reliance on those cases which hold that no adverse inference may be drawn from a defendant's decision not to take the stand. *See, e. g., Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In such a case, the fifth amendment is, of course, properly invoked. As has been previously pointed out, the situation is quite different where the privilege is waived by taking the stand. In that event the Supreme Court has indicated that a defendant's silence is subject "to the inferences to be naturally drawn from it." *Caminetti v. United States,* 242 U.S. 470, 494, 37 S.Ct. 192, 198, 61 L.Ed. 442, 456 (1917); *see also Johnson v. United States,* 318 U.S. 189, 196, 63 S.Ct. 549, 553, 87 L.Ed.

704, 711 (1943). Thus in *United States v. Weber,* 437 F.2d 327 (3d Cir.), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971), the court said:

> . . . a jury may draw an inference of guilt from a defendant's silence when the defendant testifies as to some facts, but refrains from testifying as to other facts within his knowledge. Otherwise, by selective reliance upon the Fifth Amendment to prevent cross-examination the defendant would be able to present a distorted factual picture by bringing to the jury's attention only those facts favorable to the defense. *Id.* at 334–335 (citation omitted).

While we do not hold today that a defendant's selective and improper invocation of the fifth amendment on cross-examination may be used as evidence of guilt, there certainly was no error in the court's instructing the jury here that the appellant's refusals could be considered in assessing his credibility.

### *The Contempt Citation*

■ Appellant's contentions concerning the contempt citation are more substantial. There is no doubt that a witness's refusal to answer questions which the court orders him to answer is contumacious conduct and that during a trial such a refusal may subject the witness to summary punishment for criminal contempt under Fed.R.Crim.P. 42(a). *See United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).[7] Yet

---

**6.** The question which appellant first objected to answering addressed the period from December 1974 through August 1975. The month of August was not within the indictment period, and thus the question encompassed a longer period of time than that charged in the indictment. However, as the appellant had already admitted to receiving cocaine from Soehner during the course of the conspiracy (December through July), he did not really add anything further by admitting that he possessed cocaine sometime between December and August.

**7.** The *Wilson* Court expressly rejected the argument that Rule 42(a) was only an appropriate sanction "where a witness uses scurrilous

language, or threatens or creates overt physical disorder and thereby disrupts a trial." *United States v. Wilson,* 421 U.S. 309, 315, 95 S.Ct. 1802, 1806, 44 L.Ed.2d 186, 192 (1975). The Court said:

> The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify. Whether such incentive is necessary in a particular case is a matter the Rule wisely leaves to the discretion of the trial court. *Id.*

*Wilson* also indicates that not every refusal to testify may be punished under Rule 42(a) and that the trial judge may not choose to invoke his powers at any time—even at the end of trial when the witness's continued recalcitrance can no longer obstruct the trial.

In *Wilson* the trial judge was faced with the refusal of two witnesses to testify for the prosecution in a bank robbery trial even though both of them had been given immunity under 18 U.S.C. §§ 6002, 6003 (1970). The trial judge explained to them that as long as they did not lie under oath they could not be prosecuted by reason of their testimony but warned them that he would hold them in contempt if they persisted in their refusals. When they remained recalcitrant, the court summarily held them in contempt and sentenced them to six months imprisonment. The judge also indicated that he was "going to impose the maximum . . . with the deliberate intention of revising that sentence to what might be appropriate in light of [a presentence] study that is going to be made." 421 U.S. at 312, 95 S.Ct. at 1804–1805, 44 L.Ed.2d at 191.

In affirming the trial court's imposition of a summary contempt citation under these circumstances, the Supreme Court emphasized the purpose of Rule 42(a):

In an ongoing trial with the judge, jurors, counsel and witnesses all waiting Rule 42(a) provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings. Where time is not of the essence, however, the provisions of Rule 42(b) may be more appropriate to deal with contemptuous conduct. We adhere to the principle that only "the least possible power adequate to the end proposed" should be used in

at 316–317, 95 S.Ct. at 1806, 44 L.Ed.2d at 193 (footnotes & citation omitted).

8. *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508–509, 92 L.Ed. 682, 695 (1948). *See also United States v. Abascal,* 509 F.2d 752, 755 (9th Cir. 1975).

contempt cases. *Id.* at 319, 95 S.Ct. at 1808, 44 L.Ed.2d at 194–195 (citation omitted).

Thus the Court distinguished *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), on the ground that the witness's refusal to testify before the grand jury in that case did not present the court with a problem of such urgency as to demand an immediate remedy:

A Grand Jury ordinarily deals with many inquiries and cases at one time, and it can rather easily suspend action on any one, and turn to another while proceedings under Rule 42(b) are completed. We noted in *Harris* that "swiftness was not a prerequisite of justice . . .. Delay necessary for a hearing would not imperil the grand jury proceedings." 382 U.S., at 164, 86 S.Ct., at 354 [15 L.Ed.2d at 242]. Trial courts, on the contrary, cannot be expected to dart from case to case on their calendars anytime a witness who has been granted immunity decides not to answer questions. In a trial, the court, the parties, witnesses, and jurors are assembled in the expectation that it will proceed as scheduled. 421 U.S. at 318, 95 S.Ct. at 1807, 44 L.Ed.2d at 194.

The teaching of *Wilson* is simply that Rule 42(a) is a rule of necessity and its application is "narrowly limited." [8] It fills "the need for immediate penal vindication of the dignity of the court" [9] and permits the court to act swiftly to stop conduct which amounts to intentional obstruction of court proceedings. Thus, the power to impose summary contempt exists only where there is "compelling reason for an immediate remedy," [10] and where there is no such need its use is inappropriate.

Applying these principles to the present case, it is apparent that, when the appellant was on the stand and refusing to

9. *Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767, 774 (1925).

10. *United States v. Wilson,* 421 U.S. 309, 318, 95 S.Ct. 1802, 1807, 44 L.Ed.2d 186, 194 (1975). *See also* 3 Wright, *Federal Practice and Procedure* § 707, at 166 n. 90 (1969) ("The power is at an end when the need for its use is ended.").

answer the questions put to him on cross-examination, a compelling reason existed *at that time* for proceeding under Rule 42(a). Unlike the situation in *Wilson,* however, here the trial judge chose not to resort to the immediate use of his summary contempt powers but merely mentioned that the matter would be taken up "at a subsequent time." As it turned out, "at a subsequent time" meant after all the evidence was in and counsel had already delivered their closing arguments. By that time, of course, time was no longer of the essence, for all that remained was to charge the jury. The appellant's recalcitrance was thus no longer obstructing the progress of the trial, and it was too late for a contempt citation to provide any incentive to the appellant to testify. Under these circumstances there was no reason why the court could not have proceeded under Rule 42(b) instead of Rule 42(a).

 Moreover, it should be noted that even if the trial judge here had not waited as long as he did but had proceeded immediately to find the appellant in contempt, he should have first explicitly warned the appellant of the consequences of his continued refusals and should have afforded him the right of allocution. As has been previously noted,[11] the *ABA Standards for Criminal Justice, Function of the Trial Judge* § 7.4 states: "Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment." The Advisory Committee's commentary on this section states in part:

> Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard, *Ex parte Terry,* 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405] (1888), such a procedure has

little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect upon the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course.[12]

We therefore AFFIRM the appellant's conspiracy conviction but REVERSE the criminal contempt conviction against the appellant and REMAND for further proceedings.

11. *United States v. Abascal,* 509 F.2d 752, 755 n. 7 (9th Cir. 1975).

12. One commentator has suggested that, as *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522, 528 (1968), indicates contempt is a "crime," Fed.R.Crim.P. 32(a)(1) requires that the defendant-con-

temptor be afforded the right of allocution. 3 Wright, *Federal Practice and Procedure* § 708, at 171 n. 17 (1969).

