**UNITED STATES of America, Appellee,**

v.

**John David HUGHEY, III,
Defendant-Appellant.**

**No. 323, Docket 77–1346.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1977.

Decided Feb. 15, 1978.

**112**

Martin R. Stolar, New York City (Stolar, Alterman & Gulielmetti, New York City, on the brief), for defendant-appellant.

Jo Ann Harris, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., and Robert J. Jossen, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before FRIENDLY, HAYS and MANS-FIELD, Circuit Judges.

HAYS, Circuit Judge:

Appellant, John David Hughey, III, served a sentence as a Young Adult Offender, a sentence imposed after his guilty plea to a charge of conspiracy arising out of a series of bombings in New York City in 1969. Patricia Swinton, charged in the same indictment, was apprehended in 1975, after Hughey's sentence had been served and his conviction had been set aside pursuant to 18 U.S.C. § 5021.

The Swinton trial before Judge Pollack of the United States District Court for the Southern District of New York commenced on September 22, 1975. Hughey, under Government subpoena, was called to the witness stand twice on that day. Before the jury was selected, Hughey was sworn and granted use immunity pursuant to 18 U.S.C. § 6002. At that point, Judge Pollack asked Hughey's attorney to advise Hughey "of the legal and factual significance of the legal proceedings which have just been taking place." After affirming that he had been adequately so advised, Hughey refused to testify, apparently fearing that use immunity would not protect him from prosecution for lying to an F.B.I. agent.[1] At that point, Judge Pollack warned Hughey that he could be imprisoned for civil and criminal contempt for refusing to testify.[2]

After the jury was sworn, Hughey again took the witness stand and again was warned of possible sanctions for refusal to testify.[3] Hughey, however, remained recal-

1. 18 U.S.C. § 6002 provides, in relevant part:
   Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify . . . and the person presiding . . . communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony . . . compelled under the order (or any information directly or indirectly derived from such testimony . . .) may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.*
   (Emphasis added).

2. Judge Pollack stated:
   Mr. Hughey, the Court rules that you have been given adequate immunity and are not entitled to assert the grounds for refusal to testify. The Court further rules and calls to your attention that it may summarily order you into confinement in civil contempt as a witness who refuses without just cause to comply with an order of the Court to testify.
   . . .
   I further wish to call to your attention the fact that an obstruction of justice if claimed by the government to arise from your refusal and failure to testify at trial may result in the prosecution of a criminal contempt charge.

3. Judge Pollack stated:
   [Y]ou are to be required to respond to proper questions that are allowed by the Court with the advise [sic] that the law provides sanctions to be imposed on those who disobey a court order and . . . those sanction may include if obstruction of justice is claimed by the government and found by the Court, not only the civil contempt for disobedience of the court order but possibly also criminal contempt; . . . for a civil contempt you may be committed to the custody of the Attorney General or his authorized representative for the duration of the trial; . . . for a criminal contempt you may be committed for a period of up to 18 months in prison, six months by action of the Judge

citrant, reaffirming his position that he had "just grounds for not testifying," and adding that his "conscience would not permit [him] to testify against Pat Swinton. . . . ."

After permitting sufficient fruitless questioning to establish a record, Judge Pollack adjudged Hughey to be in contempt and directed that Hughey "be forthwith confined for the duration of the trial." The Judge then invited the Government to "consider whether it . . . desires to proceed on the basis of obstruction of justice against this witness."

In language indicating that he thought Judge Pollack had cited Hughey for civil contempt,[4] Hughey's attorney immediately sought a stay to permit time to apply for bail pending appeal of the contempt adjudication. Judge Pollack denied the application and Hughey was remanded into custody.

In his Notice of Appeal filed September 24, 1975,[5] in his successful argument that Hughey should receive witness fees and travel expenses for his September 22, 1975, court appearance,[6] and in his affidavit in support of Hughey's motion for bail filed in the Court of Appeals,[7] Hughey's attorney again and again acknowledged that Hughey had been sentenced for civil, not criminal, contempt.

> with a jury or the longer period on a jury trial of the issue of criminal contempt.
>
> Judge Pollack also reminded Hughey:
>
>> You were given . . . an opportunity to confer with your counsel and after conferring with counsel indicated to the Court that all these matters were clear to you and that you understand your position.

4. In stating that he understood "that the statute under which [Hughey was] adjudged . . . in contempt does not allow for appeals in cases where the appeal is taken for delay or . . . is frivolous," Hughey's attorney tracked the language of the civil contempt statute, 28 U.S.C. § 1826(b). *See* note 8 *infra.* His further acknowledgment that, "[i]f the government wishes to proceed in a criminal way, they can, after the circuit decides whether or not there is merit to the appeal," reveals his recognition that a civil contempt had been found.

On September 26, 1975, at the conclusion of testimony in the Swinton trial, Judge Pollack signed an order reciting that Hughey had been adjudged in "civil contempt" and directing that Hughey be released immediately. On the same day, the jury acquitted Swinton on all charges in the bombing indictment.

Hughey's appeal was subsequently withdrawn, and the motion for bail filed in the Court of Appeals was never heard.

On May 21, 1976, a criminal indictment was filed, charging Hughey with contempt in connection with his refusal to testify at the Swinton trial. Hughey moved to dismiss the indictment, claiming that the proceedings before Judge Pollack were in criminal contempt, and that therefore the indictment violated the Fifth Amendment guarantee against double jeopardy. Hughey argued that the absence of a "purge clause," detailing conditions under which Hughey could obtain his release before the end of the Swinton trial, necessarily rendered Judge Pollack's order a citation for criminal contempt.

On June 10, 1977, Judge Griesa of the United States District Court for the Southern District of New York conducted a hearing on this motion, but Hughey refused to testify. On July 22, 1977, after oral argument, Judge Griesa denied Hughey's motion in an oral opinion. The Judge

5. The Notice characterized the appeal as from a contempt citation pursuant to "18 [sic] U.S.C. § 1826," the civil contempt statute.

6. Hughey's attorney argued that the Government's "sole relief for the refusal [to testify] was to move via 28 U.S.C. § 1826, . . . which, of course, was done."

7. The affidavit included the following statements:

> Upon information and belief no amount of coercive incarceration will change Mr. Hughey's mind. In addition, the government may proceed against Mr. Hughey for criminal contempt after it becomes apparent that the Civil Contempt remand has been unavailing.
>
> \* \* \* \* \* \*
>
> The notice of appeal from the order adjudging him in civil contempt and ordering him confined has been filed with this Court.

conclude[d] on the basis of the record before Judge Pollack without any other factual considerations that the proceedings were civil contempt proceedings, and that the bringing of these criminal contempt proceedings is not barred by double jeopardy.

He added, however, that from the record it was clear that Hughey's attorney knew of Hughey's right to purge and that "such right was an academic matter to [Hughey], because he unquestionably had decided to refuse to testify."

Hughey contends that Judge Griesa erred in refusing to dismiss the indictment on double jeopardy grounds. He argues that the unconditional nature of Judge Pollack's contempt order was dispositive, rendering it a citation for criminal contempt. Alternatively, he contends that the record is ambiguous with regard to the nature of the contempt adjudication, and that any ambiguity should be resolved in his favor.

We affirm the District Court.

I

The resolution of the double jeopardy claim depends on whether Hughey was adjudged in civil contempt pursuant to 28 U.S.C. § 1826,[8] or in criminal contempt pursuant to 18 U.S.C. § 401.[9] Hughey urges that a civil contempt citation must contain a "purge clause;" 28 U.S.C. § 1826 specifically provides that a recalcitrant witness shall be confined for civil contempt "until such time as [he] is willing to give such testimony" as required by the court. Here, he notes, Judge Pollack simply ordered Hughey imprisoned "for the duration of the trial," without adding that Hughey could obtain earlier release by supplying the desired testimony.

■ The difference between a sentence for civil contempt and a sentence for criminal contempt, however, is not a difference in the language of the contempt citations, but in the intended effects of the orders, punishment (criminal contempt) or coercion (civil contempt). *See Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441–43, 31 S.Ct. 492, 55 L.Ed. 797 (1911). To achieve the purpose of a criminal contempt citation, punishment for acts of disobedience, the proper sanction is imprisonment for a definite period of time. On the other hand, the appropriate civil contempt remedy for refusal to provide testimony is imprisonment until the testimony is supplied or the trial ends.

■ The nature and purpose of Hughey's contempt citation is not clear from the face of Judge Pollack's order. The period of confinement stated in the order, "the duration of the trial," is the maximum for which

8. 28 U.S.C. § 1826 provides:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

9. 18 U.S.C. § 401 provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

a person may be confined for civil contempt. On the other hand, the conditional language ordinarily characteristic of a civil contempt order is absent. Despite Hughey's urgings to the contrary, however, this absence does not, by itself, make the order one for criminal contempt.[10]

Unless the purpose of a contempt sanction is clear from the face of the order, a court has the power to look to the surrounding circumstances to determine the nature of the contempt adjudication. *See, e. g., Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. DiMauro*, 441 F.2d 428 (8th Cir. 1971). When we examine the totality of the circumstances in the instant case, it becomes clear that Judge Pollack intended his order to be one for civil contempt. At Hughey's first appearance on the witness stand, Judge Pollack warned that the *Court* could "summarily order [Hughey] into confinement in civil contempt," but noted that Hughey's refusal could also "result in the prosecution of a criminal contempt charge."[11] This statement indicates that,

in Judge Pollack's view, an immediate incarceration during the trial would be an adjudication of civil contempt, while additional proceedings would be necessary to subject Hughey to a criminal contempt sentence. It is again clear from the definitions of the possible contempt penalties supplied by Judge Pollack in his second warning that the sentence was imposed for a civil contempt.[12] Persuasive evidence of the civil nature of the order is also provided by Judge Pollack's suggestion that the Government could consider criminal sanctions in addition to the sentence already pronounced,[13] and by his recitation, in Hughey's release order, that Hughey had been adjudged in "civil contempt."[14]

That Judge Pollack intended coercion rather than punishment is further indicated by his order releasing Hughey at the end of testimony in the Swinton trial,[15] after the incarceration could no longer produce useful testimony. The context in which the sentence was imposed also strongly suggests a coercive purpose. There can be no doubt that Hughey's testimony was vital to

**10.** This court is cited to cases characterizing, as civil contempt citations, orders phrased in conditional language, *see, e. g., Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *International Business Machines Corp. v. United States*, 493 F.2d 112 (2d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), and to one case in which the absence of a purge clause was considered one of many elements favoring the finding of a criminal contempt. *United States v. DiMauro*, 441 F.2d 428 (8th Cir. 1971). Additionally, in *Baker v. Eisenstadt*, 456 F.2d 382, 387 (1st Cir.), *cert. denied*, 409 U.S. 846, 93 S.Ct. 110, 34 L.Ed.2d 87 (1972), the court refused to find a civil contempt, noting that "the essential ingredient of a sanction for civil contempt was lacking, that is, the condition that the contemnor be released if he were willing to testify." *Baker*, however, was not a case where there was even the possibility that the court had inadvertently omitted the "purge clause." Rather, the defendant's counsel raised with the court the possibility of purging, and the court responded to that suggestion by characterizing it as "your words, not mine." *Id.* at 386. In other words, the *Baker* decision was based on the *intentional* absence of "purge" language.

    Apparently, no court has held that the mere absence of conditional language mandates a

finding that the order was for criminal contempt or precludes examination of surrounding circumstances to determine the nature of the order.

**11.** *See* note 2 *supra*.

**12.** Judge Pollack cautioned that for civil contempt Hughey could be incarcerated "for the duration of the trial," while for criminal contempt he could be "committed for a period of up to 18 months. . . ." *See* note 3 *supra*.

**13.** *See* text preceding note 4 *supra*.

**14.** *See* text following note 7 *supra*. It is true, as Hughey argues, that a court's characterization of a contempt as civil is not conclusive. *Carbon Fuel Co. v. United Mine Workers*, 517 F.2d 1348, 1349 (4th Cir. 1975). As the *Carbon Fuel* court indicates, however, what is critical is a determination of "what . . . the court primarily seeks to accomplish by imposing sentence." *Id.* at 1349, *quoting Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). The court's characterization of the contempt is a datum relevant to that determination, even if it is not conclusive.

**15.** *See* text following note 7 *supra*.

the Government's case.[16] Judge Pollack attempted to obtain that testimony in the only manner permissible—incarceration "for the duration of the trial." The fact that Hughey chose recalcitrance, that he avowed that nothing could convince him to testify, does not alter the nature of his contempt citation.

While it is clear to us that, by sentencing Hughey for what he denominated as "civil contempt," Judge Pollack intended to coerce rather than punish Hughey, this intent may not have been adequately communicated. An unsophisticated witness could easily interpret Judge Pollack's warnings, which did not mention the right to purge, as statements that a recalcitrant witness could be subjected to two punishments, unconditional imprisonment during the trial for "civil contempt" and unconditional imprisonment at another time for criminal contempt.[17] The absence of a "purge clause" in the contempt order would enhance this impression of punitive purpose. This emphasizes the desirability of a district judge's tracking the exact language of the civil contempt statute as a matter of fairness to the witness and so as to avoid needless litigation.

Such a failure of communication would be bothersome if it were not entirely clear from the record that Hughey's attorney did, in fact, understand that the sentence was imposed for civil contempt and was therefore necessarily subject to purge. On at least four separate occasions, Hughey's attorney indicated that a civil contempt had been adjudged.[18]

It would be wholly unrealistic to suppose that although Hughey's attorney knew of the right to purge, Hughey did not. Hughey was permitted to consult with his attorney at length concerning these and other matters. Judge Pollack relied on Hughey's attorney to advise Hughey, in detail, of the consequences of his refusal to testify, and

Hughey stated, in open court, that he had been so advised.[19] Given these indications of his understanding as well as that of his attorney, one can draw no other conclusion but that Hughey knew of the consequences of his actions. Additionally, Hughey never directly alleged that he was unaware of his right to purge.

## II

As an alternative to his argument that his incarceration was clearly for criminal contempt, Hughey urges that the record is ambiguous, and that any ambiguity should be resolved in his favor. However, the cases he cites in support of this proposition, *Skinner v. White*, 505 F.2d 685 (5th Cir. 1974), and *Clark v. Boynton*, 362 F.2d 992 (5th Cir. 1966), are inapposite. In each, the initial ambiguous contempt adjudication was vacated as uncharacterizable as either civil or criminal contempt, a far different proposition from characterizing an ambiguous order as whatever the contemnor desires it to be. The proceedings in these cases also involved irreconcilable elements of both civil and criminal contempts, a situation not present here.

Hughey's argument must fail, however, because of a more fundamental defect. As developed above, the record is not ambiguous. Only one element of an ordinary civil contempt adjudication, a "purge clause" in the order, is absent. The absence of such clause, however, does not necessarily indicate a criminal contempt.[20] All other evidence in the record points unambiguously to the civil nature of the order.

We find that Hughey's prior incarceration was for civil contempt, and therefore affirm the district court denial of the motion to dismiss the criminal contempt indictment on double jeopardy grounds.

---

16. Hughey was one of the only two living confessed co-conspirators. The other, Jane Alpert, also refused to testify.

17. *See* notes 2 and 3 *supra*.

18. *See* notes 4–7 and accompanying text *supra*.

19. *See* note 3 and text preceding note 1 *supra*.

20. *See* note 10 *supra*.