Milton WOLFE, Petitioner-Appellant,

v.

Gerald COLEMAN, Sheriff Pinellas County Florida and Jim Smith, Attorney General of the State of Florida, Respondents-Appellees.

No. 81–5347.

United States Court of Appeals, Eleventh Circuit.

Aug. 2, 1982.

Bruce S. Rogow, Fort Lauderdale, Fla., for petitioner-appellant.

Peggy Quince, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.

Before GODBOLD, Chief Judge, HILL and FAY, Circuit Judges.

GODBOLD, Chief Judge:

Petitioner, Milton Wolfe, brought a habeas petition in district court challenging his conviction in a Florida state court for criminal contempt. The district court denied the petition upon recommendation by a magistrate and petitioner appealed. We affirm the district court's decision.

## I.

In 1980 the state attorney's office for the Sixth Judicial Circuit in Clearwater, Florida began investigating possible criminal violations by members of the Church of Scientology. The charges included alleged harassment and intimidation of newspaper reporters. Pursuant to Fla.Stat. § 27.04, the office issued an investigative subpoena to Wolfe, who was a public relations official for the Church. He received a grant of immunity by Judge Patterson, a state circuit court judge, and was ordered to answer the questions posed by the assistant state attorneys.[1] An assistant state attorney subsequently questioned Wolfe at a deposition on a Friday, and he refused to answer on First Amendment grounds the question, "Who is in charge of the Information Bureau [of the Church] in Clearwater." The assistant state attorney concluded the deposition for the day in order to give petitioner the opportunity to reconsider his refusal and to consult with an attorney over the weekend. He was warned that his continued refusal could result in his being held in contempt.

The following Monday petitioner, whose counsel was now present,[2] persisted in his unwillingness to answer the question. Later the same day members of the state attorney's office, Wolfe and his counsel appeared before a different circuit judge, Judge Andrews (Judge Patterson was not available). After some discussion among the attorneys and the judge about appropriate contempt hearing procedures, Judge Andrews decided first to rule on the appropriateness of the question that had been asked of Wolfe and the validity of his First Amendment objection. The judge determined that the question was pertinent to the state attorney's investigation and that petitioner had no valid First Amendment right to protect. The judge directed one of the assistant state attorneys to repeat the question to Wolfe and ordered him to answer. Petitioner still refused to answer the question on First Amendment grounds. The judge ordered that a contempt hearing be held, and the parties stipulated to a hearing date on Thursday, three days away. The judge stated that he thought petitioner could be found guilty of direct criminal contempt[3] whereas petitioner's counsel asserted that only indirect criminal contempt[4] was involved.

At the hearing petitioner's customary counsel was present, and he asserted the defense that the assistant state attorney had not demonstrated that the investigation concerned criminal violations. After hearing argument on the issue, the judge made

---

1. The record does not contain a clear account of this hearing before Judge Patterson.

2. The attorney was substituting for petitioner's usual counsel with petitioner's consent.

3. Florida Rule of Criminal Procedure 3.830 provides in part:

 A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court.... Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefore. The defendant shall be giv-

en the opportunity to present evidence of excusing or mitigating circumstances.

4. Florida Rule of Criminal Procedure 3.840 requires all criminal contempt, except for direct criminal contempt described in Rule 3.380, to be prosecuted by the judge's issuing an order to show cause why the defendant should not be held in contempt; the order is to specify the essential facts allegedly constituting contempt and the time and place for the hearing. Defendant must be allowed sufficient time to prepare a defense. He may submit a written answer to the charges and may be represented by counsel at the hearing. The judge determines guilt at the hearing and imposes sentence after permitting defendant to present evidence of mitigating circumstances.

a finding, which he said was based upon representations made by an assistant state attorney at a bench conference held off the record, that the investigation properly focused on criminal violations.

Wolfe then offered to answer the original question to avoid a finding of contempt. The judge rejected this defense, pointing out that at issue was petitioner's refusal to answer the question at the Monday hearing in defiance of the court's order. In the judge's opinion this type of contempt could not be purged by belated compliance. Notwithstanding the judge's explanation, Wolfe announced to the court the name of the information bureau director. The judge then found him in direct criminal contempt and sentenced him to 45 days in jail.

Petitioner remained free on his own recognizance while he pursued his state remedies of direct appeal and habeas relief. When he filed a habeas petition in the U. S. District Court for the Middle District of Florida, he unsuccessfully sought from the district court and this court release pending determination of his petition. He served his jail sentence before filing this appeal.

On appeal petitioner asserts he was denied due process in several ways. First, he should have been informed by the judge of the possible criminal contempt consequences before the court directed him to answer the assistant state attorney's question. Second, he cannot be guilty of direct criminal contempt because summary proceedings authorized by Fla.R. of Crim.Pro. 3.830 may be employed only if the refusal to answer disrupts an ongoing judicial proceeding, and the state attorney's investigation cannot be so characterized. Third, the initial hearing,

which petitioner considers the crucial hearing, did not comply with the reasonable notice requirements of Rule 3.840 for indirect criminal contempt. Predicate to this third argument is petitioner's contention that the second hearing provided him no opportunity to defend because, in the judge's mind, the contempt was complete at the initial hearing.

## II.

We first address the state's argument that Wolfe's appeal is moot because he has already served his sentence. A criminal appeal is moot [5] when the appellant has completed his sentence only if no possibility exists that any collateral legal consequences will be imposed upon petitioner on the basis of the contempt conviction. *Sibron v. N.Y.*, 392 U.S. 40, 58, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968). We need not make a detailed inquiry into the actual existence of specific collateral consequences that may be presumed. *Government of Canal Zone v. Castillo*, 568 F.2d 405, 406 (5th Cir. 1978). The former Fifth Circuit has reviewed contempt convictions after the contemnor has served his sentence because of the possibility that the contempt conviction could be later used to impeach his trial testimony or to increase his sentence for subsequent offenses. *In Re Stewart*, 571 F.2d 958, 966–67 (5th Cir. 1978); *U. S. v. Camil*, 497 F.2d 225, 226–28 (5th Cir. 1974); *U.S. v. Schrimsher*, 493 F.2d 842, 843–44 (5th Cir. 1974).

It is sufficient that, because of his contempt conviction, petitioner may be subject to an enhanced sentence as an habitual misdemeanant.[6] Fla.Stat. § 775.084. Ad-

---

**5.** Mootness, a concept derived from the constitutional requirement of a case or controversy, is not to be confused with the statutory requirement that petitioner be in custody, 28 U.S.C. § 2254(a). Both requirements must be met. Petitioner fulfills the custody condition because he was in custody when he filed his habeas petition in district court. Wolfe's completion of his sentence before lodging his appeal did not deprive this court of jurisdiction. *Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. 1981).

**6.** The Florida Supreme Court has held that criminal contempt is a crime under state law and has applied to a criminal contempt conviction a portion of the criminal code that limits imprisonment to one year for those offenses with punishment otherwise unspecified by statute. *Aaron v. State*, 284 So.2d 673, 676 (Fla. 1973). *Aaron* reversed a long-standing principle that contempt is an offense *sui generis* derived from the court's inherent authority. *See, e.g., Ballengee v. State*, 144 So.2d 68, 70 (Fla.App.1962). The *Ballengee* court held that the procedural rights mandated by the state

ditionally, petitioner could not have appealed to this court before his sentence had been served because his attempts to secure release pending determination of his federal habeas petition did not succeed. *See U. S. v. Schrimsher, supra,* 493 F.2d at 843. Consequently we hold that petitioner's appeal is not moot.

Turning to the merits, we first differentiate between the several types of contempt to determine what procedural rights petitioner was due. Civil contempt is designed to coerce the contemnor to comply with a court order, and a civil contempt action is brought by a private party, not the court. For example, when a witness who has been given immunity still refuses to testify at trial, the court may confine him in jail until he agrees to testify or until the trial is finished, whichever comes first. The contemnor always has the ability to purge himself of contempt by obeying the court order. Criminal contempt is punitive rather than remedial. It punishes disobedience of the court's order as vindication of the court's authority. The contemnor serves a fixed sentence and cannot gain release by complying with the order. *See Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441–445, 31 S.Ct. 492, 498–99, 55 L.Ed. 797 (1911); *Skinner v. White,* 505 F.2d 685, 688–689 (5th Cir. 1974).[7]

There are two types of criminal contempt, direct and indirect, and they differ mainly in procedure. When the offending behavior occurs in the presence of the judge, the court may summarily adjudge a contemnor guilty of direct criminal contempt without holding a separate contempt hearing. Summary punishment may only be imposed under narrowly circumscribed conditions, such as when the offensive behavior amounts to intentional obstruction of ongoing court proceedings. *U. S. v. Brannon,* 546 F.2d 1242, 1248 (5th Cir. 1977). Indirect contempt is committed outside the court's presence. One accused of indirect contempt, or direct contempt that does not merit summary punishment, is entitled to reasonable notice of the charges and a separate contempt hearing. *U. S. v. Hankins,* 624 F.2d 649, 652–53 (5th Cir. 1980).

On a habeas petition we review a state contempt conviction only for constitutional infirmities. Whether the court properly denominated petitioner's offense as direct rather than indirect criminal contempt is not relevant to our inquiry.[8] We are concerned with whether petitioner was accorded full procedural rights guaranteed him by the Constitution. We first decide whether constitutionally he could be punished for contempt summarily, in which case the range of guaranteed rights was narrower, and, if summary punishment was not permissible, whether he received the broader range of rights required of a non-summary contempt hearing.

We hold that the judge could not have summarily punished Wolfe for criminal contempt because there were no ongoing court proceedings to justify immediate

---

criminal code were inapplicable to criminal contempt hearings because contempt is not a crime under state law. The Florida Supreme Court has not yet decided whether the substantive provisions of the criminal code also apply to criminal contempt. If they did apply, a criminal contempt conviction would be treated as a misdemeanor, a criminal offense punishable not in excess of one year. Fla.Stat. § 775.-08(2).

**7.** Most of the federal cases cited involve the federal contempt rules for direct and indirect criminal contempt, Fed.R.Crim.Pro. 42(a) and 42(b) respectively. These cases are precedent, however, because they interpret the federal rules in light of due process requirements. *See Taylor v. Hayes,* 418 U.S. 488, 498, 94 S.Ct.

2697, 2703, 41 L.Ed.2d 897 (1974), citing *In Re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). The Florida contempt rules track the federal rules. To the extent they offer more procedural rights, they exceed federal due process guarantees. *Stewart v. Estelle,* 634 F.2d 998, 999 (5th Cir. 1981).

**8.** A court's characterization of its proceedings is not determinative of a true character of the contempt proceedings. *Lewis v. S. S. Baune,* 534 F.2d 1115, 1119 (5th Cir. 1976). Reviewing courts affirm convictions despite the originating court's uncertainty about the type of contempt involved if the contemnor has been afforded all procedural rights. *See, e.g., U. S. v. Powers,* 629 F.2d 619 (9th Cir. 1980).

vindication of the court's authority. Although petitioner refused to answer in the court's presence, the hearing cannot be characterized as a court proceeding. *Harris v. U. S.,* 382 U.S. 162, 164–65, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965) (immunized witness who refused to testify before grand jury brought before judge and ordered to answer; held, no ongoing court proceedings to permit summary adjudication); *accord, Pendley v. State,* 392 So.2d 321, 322 (Fla. App.1980). *See U. S. v. Hankins, supra,* 624 F.2d at 653 (alleged contemnor refused to answer question at a contempt hearing despite court's order; held, no ongoing court proceeding). Thus Wolfe was entitled to nonsummary contempt procedures.

■ Next we consider the specific respects in which petitioner contends he did not receive due process. Wolfe argues that the judge was required to explicitly warn him that his continued refusal to answer the question could result in criminal contempt. Although this proposition is debatable in the nonsummary contempt context,[9] we hold that during the first hearing before Judge Andrews petitioner knew he could be subject to criminal contempt. The assistant state attorney warned him during the deposition on Friday that he could be found in contempt, although criminal contempt may not have been specified. Moreover, petitioner consulted with his substitute attorney, who came to the first hearing prepared to discuss the appropriate procedures for a criminal contempt hearing. We conclude that petitioner knew of the possible criminal consequences of his actions. *See, e.g.,*

*U. S. v. Hughey,* 571 F.2d 111, 116 (2d Cir. 1978).

■ Petitioner argues that he could not be guilty of direct criminal contempt because the state did not prove that the contempt occurred in the presence of the judge during an ongoing judicial proceeding. We hold that the correctness of the direct/indirect label is immaterial to the substantive validity of petitioner's criminal contempt conviction. The existence of an ongoing court proceeding is not an essential element of the crime of contempt that the state must prove beyond a reasonable doubt. Rather, the fact of ongoing court proceedings helps determine what procedural rights are due the contemnor.

■ Wolfe contends that the initial hearing before Judge Andrews did not provide him reasonable notice and an opportunity to defend as required for nonsummary contempt hearings.[10] We understand petitioner's position to be that before the court could rule on his First Amendment objection and order him to answer the question it was required to hold a formal contempt hearing with reasonable notice. A contempt hearing is held when a defendant is accused of violating a court order. Wolfe's refusal to answer the question at the deposition was not, by itself, contemptuous behavior. The assistant state attorney represented to Judge Andrews at the initial hearing the following: Prior to the deposition Wolfe had refused to obey the subpoena to appear for deposing. Following a show cause order before Judge Patterson and a night in jail, Wolfe had been given immunity and ordered to comply with the

---

**9.** The cases which have held that the court must forewarn the contemnor that his continued behavior could result in contempt have reviewed summary contempt convictions. *See, e.g., U. S. v. Powers, supra* n.8; *In re Chaplain,* 621 F.2d 1272 (4th Cir. 1980) (en banc); *U. S. v. Brannon, supra.* In an ongoing court proceeding, the court may adjudicate contempt without giving the contemnor an opportunity to speak in his defense. Thus, it is especially important that he be given some notice, and forewarning is the only practical method. Where contempt is not summarily imposed, due process requires that notice of the *charges* and an opportunity to present evidence or argument be given. *Id.* at 1249, citing *ABA Standards for Criminal*

*Justice, Function of the Trial Judge* § 7.4. Notice of what the judge considered contemptuous behavior is distinct from forewarning before the behavior occurs.

**10.** The state argues that petitioner has waived his right to appeal the issue of procedural requirements for a nonsummary contempt hearing because he failed to raise the issue in his objections to the magistrate's report. *See Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982) (Unit B en banc). We have examined Wolfe's memorandum to the magistrate and his objections to the magistrate's report and conclude that he sufficiently preserved the issue.

subpoena. Assuming the correctness of this representation there is, nevertheless, nothing in the record indicating that Wolfe's refusal to comply with the subpoena and Judge Patterson's subsequent order that Wolfe submit to the deposition involved First Amendment claims. Presumably Wolfe objected to being deposed on Fifth Amendment grounds, since he was granted immunity. Additionally, neither party contends that Wolfe violated Judge Patterson's order. Thus, so far as this record reveals, there was no prior ruling on Wolfe's First Amendment claim for him to disobey.[11] When the court found his First Amendment objection to be invalid and ordered him to answer, petitioner then had a choice of complying with or defying the court order. Wolfe disobeyed the court's order, which entitled him to notice of the charges and a separate contempt hearing. These he received.

Petitioner maintains that the second hearing was meaningless because, in the trial court's opinion, the contempt already had been committed at the first hearing, leaving him with no defense. To the contrary, at the contempt hearing Wolfe challenged the validity of the state attorney's investigation as a defense, and the court fully considered the argument. Also he had the opportunity to present mitigating circumstances for his disobedience, but he chose instead to answer the question.[12] While petitioner does not assert that the second hearing failed to comply with non-summary procedures, we observe that he was given reasonable notice of the criminal charges. Although the court did not give written notice as required by Fla.R.Crim. Pro. 3.840(a)(1), the record demonstrates that, by the end of the first hearing before Judge Andrews, both the judge and the attorneys understood that the hearing would be for criminal contempt; they simply disagreed whether it was direct or indirect contempt. Actual notice is all the Constitution requires. *Hopkins v. Jarvis*, 648

F.2d 981, 985 (5th Cir. 1981), citing *U. S. v. United Mine Workers*, 330 U.S. 258, 298, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947). Moreover, petitioner had adequate time in which to prepare his defense since his attorney stipulated to the hearing date.

 Petitioner asserted at oral argument that the judge should have first imposed civil contempt to coerce him to answer, under the court's duty to use "the least possible power adequate to the end proposed," citing *U. S. v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975) and *U. S. v. Brannon, supra,* 546 F.2d at 1248. These cases addressed the circumstances under which the court should summarily punish a contemnor, not whether the court may impose criminal sanctions at all. The same conduct may result in both civil and criminal contempt charges. *U. S. v. United Mine Workers, supra,* 330 U.S. at 298–99, 67 S.Ct. at 698–99. If the court believed, in its discretion, that vindication of its authority was appropriate, we will not second-guess it.

AFFIRMED.

---

11. This conclusion is limited to the facts of this case. We do not address generally what objections may be asserted at a deposition without disobeying a court order to comply with the subpoena for appearance to be deposed.

12. He did not attempt to assert more fully, as a possible mitigating circumstance, his First Amendment objection.