UNITED STATES of America,
Plaintiff–Appellee,

v.

Frederick B. AYER; Rita K. Ayer; Ritz Associates, Inc.; FBA, Inc.; Universal Aircraft Corporation; George Rowland; Donald Whitney; and Empire of America Savings Bank, Defendants,

Appeal of Frederick B. AYER.

No. 397, Docket 88–6164.

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1988.
Decided Jan. 25, 1989.

Charles David Kreps, Jr., New York City (Lawrence S. Feld, Kostelanetz Ritholz Tigue & Fink, New York City, of counsel), for appellant.

Cynthia Keeffe Dunne, Asst. U.S. Atty., New York City (Edward T. Ferguson, III, Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty. S.D. New York, New York City, of counsel) for plaintiff-appellee.

Before LUMBARD, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

Appellant Frederick B. Ayer (Ayer II) appeals from an order of the United States District Court for the Southern District of New York (Owen, J.) holding him in civil contempt and directing him to serve a fifteen-day term of confinement. Ayer II contends that the order is criminal rather than civil because it lacks conditions by which he could purge himself of the contempt, and that he should have been afforded the substantive and procedural safeguards that attend a finding of criminal contempt. He also challenges as vague and ambiguous the preliminary injunction he was alleged to have violated. Because we agree that the sanction imposed improperly was designated as a penalty for civil contempt, we vacate the order of the district court and remand for further proceedings.

## BACKGROUND

Ayer II is a son of Frederick B. Ayer (Ayer I), who is a defendant in the underlying action and against whom the government obtained a judgment on January 21, 1987 in the amount of $939,903.54 for unpaid taxes. That judgment remains unpaid.

After the date of judgment, Ayer I maintained a high standard of living. He accomplished this by secreting assets through "alter ego" corporations, some of whose checking accounts he used as his own. Through such manipulations, both money and assets were transferred to members of Ayer I's family. These transfers tended to defeat the government's efforts to satisfy the judgment.

On March 17, 1987, the district court issued a temporary restraining order enjoining most transfers of assets by, to or for the benefit of Ayer I. After a March 27, 1987 hearing, which Ayer II attended, the district court on April 7, 1987 issued the preliminary injunction out of which this contempt arises. The injunction prohibits

> [Ayer I], his agents, servants and employees, and all those acting in concert with him, including but not limited to employees and shareholders of Universal Aircraft Corporation, Aerospace Trading Corporation, FBA Aircraft SA, and FBA Inc., ... from transferring any sum of money or thing of value for the benefit of [Ayer I], Donna Ellwanger [his girlfriend and mother of his other son], any children of [Ayer I], or any spouse or former spouse of [Ayer I]; and ... from transferring any sum of money or thing or [sic] value in payment of the obligations of [Ayer I].

However, it does permit Ayer I "to expend funds for daily living expenses, for which he shall account to the United States Attorney for the Southern District of New York." This order applied to Ayer II and restricted him from transferring assets, because he was the president and an employee and shareholder of FBA, Inc. ("FBA"), and the president and controlling shareholder of Universal Aircraft Corporation and FBA Aircraft SA.

Presumably to circumvent the order, Ayer II began siphoning money from FBA, in the form of loans, to pay his father's debts. From April 10, 1987 through September 21, 1987, Ayer II and the Ayer entities extinguished over $100,000 of Ayer I's obligations. Large portions of these payments went to Ayer I's first and second wives, and to the mortgage and maintenance charges on family members' homes. In addition, Ayer II paid approximately $15,000 to cover debts incurred by his father for travel, reading materials, entertainment, expenditures at the Harvard Club and maintenance on Ayer I's Florida residence.

As a result of these actions, the court, at a September 4, 1987 hearing, adjudged Ayer I in contempt and ordered him to submit a weekly account of his daily living expenses. In an Opinion and Order dated July 5, 1988, the district court found "clear and convincing proof of Ayer [I's] and Ayer II's deliberate violation of the April 7, 1987 order, the father acting directly and the son 'in concert with' him." 687 F.Supp. 130. The order therefore held Ayer I and Ayer II "in civil contempt" under 18 U.S.C. section 401(3) (1982). "Given the extensive history of transfers and loans from one corporate entity to another to defeat payment of obligations," the district court concluded "that a monetary sanction would be ineffective in bringing about their future compliance with this Court order." To "compel such future compliance" with its order, the court ordered each Ayer to serve a term of civil confinement of fifteen days in the Metropolitan Correctional Center.

Ayer II served six days of this sentence, but was released pursuant to a stay granted by this Court pending expedited appeal. Ayer I failed to report for confinement; he currently is a fugitive and is not a party to this appeal.

Ayer II contends that the contempt order is criminal, not civil, because it contains no conditions through which he can purge himself of the contempt. The government argues that a purge mechanism is neither necessary nor possible for a civil contempt where the underlying order is to "refrain"

from certain action. Ayer II maintains further that the preliminary injunction he was alleged to have violated is vague and ambiguous.

## DISCUSSION

■ Courts long have recognized the distinction between civil and criminal contempt. "[I]f the sentence is ... criminal in nature, ... it may not be imposed unless federal constitutional protections are applied in the contempt proceeding." *Hicks v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 1432, 99 L.Ed.2d 721 (1988). Some of these safeguards are embodied in Federal Rule of Criminal Procedure 42(b), which regulates notice, trial by jury and bail. Further, the civil offense need be proved only by clear and convincing evidence, whereas the criminal offense must be proved beyond a reasonable doubt and requires proof of willfulness. *SEC v. American Bd. of Trade,* 830 F.2d 431, 441 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988).

■ The law is clear that where the order violated mandates a positive action, such as a command to testify, the absence of conditions through which the contemnor may purge his sentence renders the contempt citation criminal. *See Hicks,* 108 S.Ct. at 1429. Conversely, where the contemnor holds the "key to the jailhouse door," through conditions he is capable of performing, the contempt is civil. *See id.* at 1430. Even where conditions of the contempt order are unstated, so long as the contemnor understands them to exist, the contempt is considered civil. *See United States v. Hughey,* 571 F.2d 111, 116 (2d Cir.1978).

A purge mechanism can be employed where the underlying injunction requires the contemnor to take some action and not, as the order here requires, to refrain from a prohibited action. The government argues that a purge mechanism should not be required for a civil contempt in a case where use of a purge is impossible.

■ The government points to various factors present here that militate in favor of finding civil as opposed to criminal contempt. For instance, coercion to assure future compliance indicates a civil contempt. *See Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 115 (2d Cir.1988). The district court's labeling of the contempt as "civil" also is a relevant consideration. *See Hughey,* 571 F.2d at 115 & n. 14 (citing *Carbon Fuel Co. v. United Mine Workers,* 517 F.2d 1348, 1349 (4th Cir.1975)). Moreover, the brief confinement period is said to be more indicative of civil contempt than criminal. Finally, there is a "presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature of the contempt." *United States v. Wendy,* 575 F.2d 1025, 1029 n. 13 (2d Cir. 1978).

■ Despite these considerations, the contempt order here clearly is criminal. First, the order does not become civil merely because it is calculated to coerce future compliance, as criminal contempts also have a coercive effect, *see Hicks,* 108 S.Ct. at 1431–32. What is important is the nature and specific purpose of the contempt order. *See Hess,* 846 F.2d at 115. In *Hess,* the contempt for violating an order directing a party to make a settlement offer prior to trial was criminal because it was designed to punish past conduct. That order also had a coercive purpose: The district court explained that it was imposing a fine "because this is the second time that I have had a New Jersey Transit case in which ... we haven't been able to get the decision-makers to focus on the case until after it has gone to trial" and "maybe the point will get across." *Id.* The contempt order there came after the trial began, so it was too late to purge the contempt; rather, the contempt order was designed to coerce conduct in future cases. As in *Hess,* the coercion in the instant case was not designed to force compliance with a purge-mechanism condition, but to affect general future conduct (i.e., the cessation of secreting funds in violation of the injunction). There is nothing that Ayer II could have done to undo the past violations of the injunction. Moreover, the order was not

designed to allow Ayer II to remedy the past violations. Because the main purpose of the order was to punish past conduct, the nature of the contempt order is criminal.

More important to our analysis is the absence of a purge mechanism. In *Hicks*, the Supreme Court discussed the factors that distinguish civil from criminal contempt. A contempt is civil "if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive [i.e., criminal] if the 'sentence is limited to imprisonment for a definite period.'" *Hicks*, 108 S.Ct. at 1429 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). A determinate sentence without a purge mechanism is criminal in nature. *See id.* 108 S.Ct. at 1434.

The sanction in this case, limited as it is to a definite and unconditional period (i.e., lacking a purge mechanism), is criminal. Ayer II thus is entitled to the procedural safeguards necessary to an adjudication of criminal contempt. Because the appropriate procedural safeguards were not provided, the contempt order must be vacated. In view of the foregoing, we find it unnecessary to address Ayer II's claim that the injunction is vague and ambiguous.

## CONCLUSION

The contempt order is vacated and the matter is remanded for further proceedings.