CARBON FUEL COMPANY, a
corporation, Appellee,

v.

UNITED MINE WORKERS OF
AMERICA, Appellant.

No. 74–1598.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1975.

Decided June 19, 1975.

James M. Haviland, Charleston, W.
Va. (Joseph A. Yablonski, Washington,
D. C., Lewis D. Sargentich, Cambridge,
Mass., and Daniel B. Edelman, Wash-
ington, D. C., on brief), for appellant.

Forrest H. Roles, Union, W. Va. (David
D. Johnson, Jr., and Roger A. Wolfe,
Jackson, Kelly, Holt & O'Farrell,
Charleston, W. Va., on brief), for appel-
lee.

Before HAYNSWORTH, Chief Judge,
and RUSSELL and WIDENER, Circuit
Judges.

RUSSELL, Circuit Judge:

The appellant Union appeals
from a conviction entered for contempt
by reason of an alleged violation of a
temporary restraining order theretofore
issued by the District Court. The con-
flicting positions of the parties on appeal

relate to the nature of the contempt adjudged by the District Court. It is conceded that whether the contempt be considered civil or criminal is largely the dispositive issue in the appeal. If the contempt be deemed civil, the appellee correctly takes the position that the order of the District Court would not be appealable. This is so, because, while the appellant Union does not entirely concede the non-appealability of a civil contempt by a party to the action, the rule is settled that, "[A] civil contempt proceeding is in effect a continuation of the main action and therefore a party to a suit may not review upon appeal an order fining or imprisoning him for civil contempt except in connection with appeal from a final judgment in the main action." Wright, *Civil and Criminal Contempt in the Federal Courts*, 17 F.R.D. 167, 176 (1955). On the other hand, it is equally well established that criminal contempt proceedings are "independent of the main action" and any conviction therein is "a final order and appealable * * *." Wright, *Civil and Criminal Contempt in the Federal Courts, supra*, at 176; *Duell v. Duell* (1949), 178 F.2d 683, 688, 14 A.L.R.2d 560. And in that connection, the appellee concedes that, if the contempt proceedings be deemed criminal in nature, the judgment of the District Court must be reversed for failure to observe the procedural requirements mandated in such proceedings.[1]

■ We are of the opinion the contempt proceedings herein were criminal in character, that the judgment of contempt is therefore appealable, and, since there was a denial of due process in the proceedings as had, the judgment must be reversed.

■ The true distinction between civil and criminal contempts lies in "what * * * the court primarily seek[s] to accomplish by imposing sentence" in the proceedings. *Shillitani v. United States* (1966), 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622; *International Business Machines Corp. v. United States* (2d Cir. 1973), 493 F.2d 112, 114–5, *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774; Dobbs, *Contempt of Court; A Survey,* 56 *Cornell L.Rev.* 183, 235 (1971). Civil contempt, on the one hand, is " 'wholly remedial' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance." *Southern Railway Company v. Lanham* (5th Cir. 1969), 403 F.2d 119, 124, 33 A.L.R.3d 427; *Cromaglass Corporation v. Ferm* (3d Cir. 1974), 500 F.2d 601, 604.[2] Civil contempt is conditional or contingent in nature, terminable if the contemnor purges himself of the contempt. *De Parcq v. United States Court for So. Dist.* (8th Cir. 1956), 235 F.2d 692, 699. On the other hand, criminal contempt is punitive in nature, is intended to vindicate the authority of the court, and cannot be purged by any act of the contemnor. *Nye v. United States* (1941), 313 U.S. 33, 43, 61 S.Ct. 810, 85 L.Ed. 1172. It is "unconditional, since it penalizes yesterday's defiance rather than seeking to coerce tomorrow's compliance. It cannot be ended or shortened by any act by defendant." Wright & Miller, *supra*, at 585.

Measured by these standards, we think it obvious that, in essence, these contempt proceedings were criminal in nature. The fine imposed was unconditional and punitive in character; it ran to the clerk of the court and not to the appellee. It was not intended to be "compensatory" of any losses sustained by the appellee as a result of the con-

1. The appellee, with commendable candor, states in its brief "that if the conviction were determined to be criminal contempt (of which this Court would have jurisdiction) it could not be defended because the procedure was clearly inadequate for criminal contempt." (Footnote omitted.)

2. *See* Wright & Miller, *Federal Practice and Procedure*, § 2960, vol. 11 at 584:

"The relief granted in civil contempt proceedings, * * * is compensatory or coercive. This often takes the form of a fine in the amount of the damage sustained by plaintiff * * *."

tempt. Had the fine been intended for the benefit of the appellee by way of compensation for loss sustained, it would have been made "payable to the complainant" and would necessarily have been "based upon evidence of complainant's actual loss;" moreover, the "right [of the appellee], as a civil litigant, to the compensatory fine [would have been] dependent upon the outcome of the basic controversy." *United States v. Mine Workers* (1947), 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884. It is true the appellee stated it was prepared to prove losses of $21,000 per day but it actually offered no evidence "of complainant's actual loss." And the fine imposed bears no possible relation to the daily loss as claimed by the appellee. The fine was thus clearly punitive.

■ We consider of no moment that the proceedings were begun and designated as a civil contempt proceeding. The nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the parties themselves. *See Shillitani, supra; Southern Railway Company v. Lanham, supra.*[3]

After the District Court had made its oral ruling imposing a fine of $10,000 on the appellant Union, it requested the ap-

pellee to submit a formal order, embodying findings of fact and conclusions of law in conformity with its ruling. The appellee did that. In its findings of fact, as so submitted, it included no finding on the amount of loss, if any, sustained by the appellee on account of the alleged violation of the temporary restraining order. It did, however, describe the proceeding as one in "civil contempt" and provided that the fine imposed be paid to the appellee. The appellant, it is argued by the appellee, objected to this latter provision and, in the course of stating its objection, observed it made no difference to whom the fine was paid in determining whether the proceedings in contempt were civil or criminal. The appellant did, it is admitted, contend at all times that the proceedings were criminal. The Court, however, on its own, made its own decision, as evidenced by the final order entered, that the fine should be paid to the clerk of the court and not to the appellee and omitted the language describing the proceeding as for "civil contempt." And this was in keeping with its earlier ruling, which was manifestly expressive of a criminal contempt rather than a civil contempt.

The conviction for contempt is accordingly vacated and the cause is remanded for further proceedings not inconsistent herewith.

---

**3.** In *Lanham* the Court imposed an unconditional fine, payable as in this case to the clerk of court, for contempt in wilfully failing to obey an order for production in a civil action. The contempt proceedings were described as civil by the District Court. The appellate court held, however, that the proceedings were criminal since it afforded no relief to the private suitor and did not permit purgation.