**Howard TAYLOR, Plaintiff,**

v.

**The HOME INSURANCE COMPANY, Defendant.**

No. C–C–82–098–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 22, 1986.

George S. Daly, Charlotte, N.C., for plaintiff.

George R. Hodges, Charlotte, N.C. and Raymond L. Vandenberg, New York City, for defendant.

MEMORANDUM OF DECISION ON PLAINTIFF'S MOTIONS FOR SANCTIONS AND FOR PARTIAL SUMMARY JUDGMENT

McMILLAN, District Judge.

### PRELIMINARY STATEMENT

This is an action under the Age Discrimination in Employment Act. It was tried to a jury in October, 1983. The jury returned a verdict for the plaintiff on the age discrimination claim and further found the violation to be willful. Judgment was entered on the verdict and appropriate equitable relief was ordered. On appeal the Circuit Court affirmed on all matters except the jury verdict of willfulness, which was remanded for retrial. The mandate of the Circuit Court was received in this court on January 24, 1986, and on April 28, 1986, a partial final judgment was filed reading in pertinent part:

[I]t is ORDERED, ADJUDGED AND DECREED:

\* \* \* \* \* \*

2. Defendant is directed to offer Plaintiff the job of Charlotte Branch Manager and the job of Southern Regional Casualty Underwriting Manager (with relocation expenses) when each next becomes available, and Plaintiff may decline or accept the first such offer and in either event await the other offer.

3. Until such time as Plaintiff is thus reinstated in one of those two positions, or declines them both, Defendant shall pay Plaintiff at the higher of (1) the same salary, benefits, and emoluments, including increases and bonuses, as have been or are being and will be paid to Southern Regional Underwriting Managers with no less seniority than Plaintiff, or (2) the same salary, benefits, and emoluments, including increases and bonuses, as have been or are being and will be paid to Southern Region Branch Managers with no less seniority than Plaintiff. Such emoluments shall include full participation in the Home Builder plan.

Such payments shall be reduced by such amounts as Plaintiff earns, or is able to earn, with reasonable diligence, during that period.

4. Defendant shall continue to pay Plaintiff on the higher of the two foregoing bases until such time as Plaintiff (1) accepts reinstatement in the lower paying position or (2) declines an offer of

the higher paying job, in which case defendant shall thereafter and until reinstatement pay Plaintiff at the rate of the lower paying position.

5. Defendant is further ORDERED to provide Plaintiff with all pension benefits which would have accrued to Plaintiff had he not been illegally demoted by Defendant; specifically, Defendant shall consider as "earnings," for purposes of Plaintiff's pension plan, the salary of the Charlotte Branch Manager until January 31, 1981, and, following that date, the higher of (1) the salary of the Charlotte Branch Manager, or (2) the salary of the Southern Regional Underwriting Officer.

Following reinstatement to one of the two positions, referred to in paragraph 4, above, Plaintiff's pension and retirement benefits shall be computed and set aside, and paid upon his retirement, on a basis commensurate with the salary Plaintiff actually receives in the position[s] in which he is placed.

6. Plaintiff shall be provided office space and working conditions and equipment and stenographic and other assistance commensurate with those afforded others of comparable rank and seniority.

7. Interest shall be paid on all sums now payable, from the day the verdict was entered.

By separate order filed the same day, April 28, 1986, discovery was reopened.

On June 10, 1986, plaintiff filed a motion to compel discovery, stating that the defendant had made no response to the several sets of interrogatories and document requests then outstanding.

On July 22, 1986, plaintiff filed an amended motion to compel discovery, which recited that defendant had made some discovery since the motion to compel, but that substantial discovery was still overdue.

At a hearing held July 28, 1986, defendant offered no substantial explanation for its failure to comply with plaintiff's discovery requests.

Accordingly, on July 29, 1986, the court entered the following order:

1. Defendant will comply with *all* outstanding discovery requests by August 15, 1986.

2. Sanctions will be imposed under the rules if this order is not complied with by August 15, 1986.

3. Upon motion, plaintiff will be awarded fees and expenses as may be appropriate.

4. Plaintiff by August 25, 1986, will propose such orders and judgments as may be justified after the discovery order has been complied with.

On August 22, 1986, plaintiff filed a motion for sanctions, in which he claimed that defendant had made additional discovery by August 15, as ordered, but had materially failed to make complete discovery. In particular, plaintiff complained that defendant had failed to make discovery (A) about the "green books" (Southern Region Monthly Management Reports), and (B) about the qualifications of Wendell Saline, the head of defendant's Southern Region and a person who, plaintiff claims, holds the position which the plaintiff, absent discrimination, would presently have occupied.

On August 27, 1986, the plaintiff filed a motion for partial entry of judgment pursuant to Fed.R.Civ.P. 56 seeking the following relief:

1. That plaintiff be awarded the next vacancy in the positions of the head of the Southern Region or of the Mid-South Region.

2. That the defendant pay the plaintiff the salary and bonuses paid to the various listed officers of the defendant who plaintiff alleges occupy the positions which rightfully the plaintiff should occupy.

3. That the defendant credit the plaintiff's various retirement plans so that each has the present value it would have if the plaintiff had received salary and bonuses equivalent to those of the person in the plaintiff's rightful place.

4. That the defendant allow the plaintiff to attend office staff meetings in Charlotte and allow the plaintiff to attend conferences and meetings with com-

pany officials which the Charlotte branch manager attends.

5. That the defendant allow the plaintiff to attend meetings of the Carolina Insurance Managers Association.

6. That the defendant give the plaintiff access to the management information available to the Charlotte Branch Manager, to the Southern Regional Head, and to the Mid-South Regional Head.

7. That the defendant provide the plaintiff with office quarters equal to those of the Charlotte Branch Manager.

8. That the defendant pay the plaintiff the sum of $14,350.00 for the defendant's failure to allow the plaintiff to use a company car for personal business.

On September 4, 1986, the defendant filed an affidavit by Ms. Elaine Lesser in opposition to the plaintiff's motion for sanctions.

On September 10 and 11, 1986, plaintiff's motions for sanctions and for partial entry of summary judgment were heard by the court.

On September 10, 1986, the first day of the hearing, it appeared to the court that Ms. Lesser's affidavit, based largely on "information and belief," was an inadequate response to the court's July 29, 1986, order. It also appeared to the court that defendant might be in contempt of that order. Accordingly, the court adjourned the hearing and issued the following order:

... It seems to appear that the defendant is in gross contempt of the orders of this court. Before firming up that conclusion and firing off half cocked, the court needs some sworn testimony.

IT IS THEREFORE ORDERED that the defendant produce the witness, Ms. Elaine Lesser, for a hearing to be conducted before me at 10:00 a.m. on Thursday, September 11, 1986 ....

On September 11, 1986, the court heard the live testimony of Ms. Lesser, and further argument on the motions for sanctions and for summary judgment. The court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT AS TO SANCTIONS

Elaine Lesser is the defendant's affirmative action and equal employment opportunity officer. She works in New York City on the staff of the general counsel of defendant's parent corporation, and she is not responsible for the custody of personnel records.

### A. The "Green Books"

On January 24, 1986, plaintiff requested production of the defendant's Southern Region Monthly Management reports, or "green books," for every month after December, 1978. The defendant made no objection to this request, and it assigned Ms. Lesser to obtain these books.

On August 15, 1986, the deadline set by the court's order of July 29, 1986, the defendant produced some incomplete and largely illegible statistical excerpts from these books. For large periods of time nothing at all was produced.

At the evidentiary hearing on September 11, 1986, Ms. Lesser testified that she handled the request for production by directing a subordinate to obtain the green books from the Business Systems Department at defendant's New York office. The subordinate later presented her with the documents which were ultimately furnished to plaintiff. She testified that defendants ceased producing green books after December, 1985. Ms. Lesser had no explanation why the green books for November, 1981, and the year 1985 were missing. She made no attempt to inquire into this matter. She did not, either personally or by subordinate, inquire of any Southern Region Branch Office whether it had copies of the green books for November, 1981, or the year 1985. She did not search any of defendant's computer files to see if they contained information from, or duplicative of, the green books. She did not inquire of defendant's counsel as to whether he might have the requested documents. And although she had had more than seven

months, she did not herself go to the defendant's records department even though it was in the same building where she worked. When some documents were produced by a subordinate, she did not even examine the copies which were eventually furnished to the plaintiff to see whether they were legible.

Although Ms. Lesser testified that she was aware of the court's order of July 29, 1986, and that she was aware that the documents produced were illegible before coming to court on September 11, even then defendant did not produce legible copies of the illegible documents.

Defendant's failure to supply this information has continued to this very day. On October 3, 1986, the plaintiff filed a report that the defendant's only effort subsequent to the close of the September 11, 1986, hearing has been to produce further illegible copies of the "green books."

When Ms. Lesser was asked whether she was aware that the "green books" often contained written comments, she first admitted that "some years they did that." When asked to specify what she meant, she stated that "maybe" she did not know the answer to the question. Eventually, she testified that she could find no comment sections from the "green books" in the places she had looked "so far."

The court finds that Ms. Lesser has not made a good faith effort to comply with its order of July 29, 1986.

### B. *Wendell Saline*

(1) Documents: On June 18, 1986, plaintiff requested, among other documents, the personnel file of Wendell Saline, the head of defendant's southern region. Defendant did not object to this request and assigned Ms. Lesser to obtain Mr. Saline's file. Ms. Lesser testified that she directed a subordinate to obtain the file from the Staff Services Department at the home office in New York and from the Atlanta office where Saline worked. Documents purporting to be those files were delivered to her by the subordinate. Those documents comprise twelve pages. Ms. Lesser looked through the pages before forwarding them to defendant's counsel, but did nothing to determine whether the file was complete.

The pages in the file include no employment application, no personnel employment record and no job appraisals. In fact, they contain little information at all bearing on Saline's job qualifications. An employment application and a personnel employment record usually contain a statement of the applicant's education and prior employment experience. In response to plaintiff's questions on this point, Ms. Lesser testified that she had been told by Mr. Saline that he had made no written employment application, and that he had never received a job appraisal.

The defendant's unusual claims concerning Mr. Saline's personnel file, given the sensitive nature of Mr. Saline's qualifications in this litigation, and which come in the face of twenty-two personnel files previously furnished which do contain such information, lead the court to the opinion that defendant should produce competent testimony to dispel the appearance that the defendant has failed to produce the entire personnel file of Mr. Saline. Ms. Lesser's testimony, lacking in personal knowledge and relying entirely on hearsay, fails to dispel this appearance.

(2) Interrogatories: Plaintiff's fourth set of post-remand interrogatories was served June 18, 1986. Defendant's responses to them, served August 15, 1986, state:

\* \* \* \* \* \*

2. What persons were considered by the Defendant for the job of Southern Regional Head at any time between January 1, 1982, and June 30, 1986?

*RESPONSE:* Henry Lenz and Wendell Saline. Other names are unknown.

3. State the prior relevant experience and age, at time of consideration, of all persons named in response to Interrogatory No. 2.

*RESPONSE:* See personnel files of Henry Lenz and Wendell Saline previously supplied.

4. Which persons named in response to Interrogatory No. 2 did Defendant

consider qualified for the job, which not qualified, and in each case for what reasons?

*RESPONSE:* Henry Lenz and Wendell Saline. Other names are unknown. Wendell Saline was considered qualified at least because he had experience in managing a large office. Other reasons are unknown.

Interrogatory numbers 3 and 4 require defendant to reveal all the knowledge of any of its employees, including its present employee, Mr. Saline, regarding Saline's prior experience. Ms. Lesser testified that she read interrogatory numbers 3 and 4 to call for a statement of the reason that defendant considered Mr. Saline qualified for the job at the time the decision to hire him was made. Since Saline was not an employee of defendant at the time the decision to hire him was made, Ms. Lesser asserts that she believed he could not have known why the defendant hired him and thus failed to ask him. The information requested in interrogatories 3 and 4 is clear. The court finds Ms. Lesser's statement as to what she believed at the time to be a studious attempt to avoid revealing Mr. Saline's job qualifications. As such, defendant has failed to comply with the court's order of July 29, 1986.

On August 15, 1986, the defendant answered plaintiff's fifth set of post-remand interrogatories. Interrogatory No. 7 in this group of interrogatories states:

7. What information—including, without limitation (a) educational achievement; (b) experience with companies other than defendant; (c) experience with defendant; and (d) appraisals by defendant; *does defendant have* which tends to show that: ... (3) Wendell Saline ... was more qualified than plaintiff to hold the job that he held at all times since April 1, 1979? [Emphasis added.]

*ANSWER:* None except the information contained in the individuals' personnel files.

This interrogatory calls for the defendant to furnish what information it presently has about Saline's qualifications. Saline is a current employee of defendant and possesses this information. Ms. Lesser recognizes in her affidavit that plaintiff sought to discover Saline's qualifications as such, in addition to defendant's assessment of them. Furthermore, when the plaintiff requested information about Mr. Emmett Morgan's qualifications in the same interrogatory in which the plaintiff requested information about the qualifications of Mr. Saline, the defendant freely produced Morgan's affidavit. The court can only conclude the defendant has responded to its July 29, 1986, order in bad faith.

Defendant has a history of failing to make discovery. In 1982, prior to the first trial of this action, plaintiff was three times forced to file motions to compel discovery. Four times the court had to intervene during the year 1982 by ordering defendant to produce the requested information. The court order of September 17, 1982, stated that the defendant appeared to be in contempt of its order of July 9, 1982. It was only under the threat of contempt that the defendant eventually complied with discovery and even then two more interventions by the court were required before the case could be tried.

In 1982, the court imposed no greater sanctions on defendant than to require it to pay plaintiff's reasonable attorney fees pursuant to Rule 37(a)(4) of the *Fed.R. Civ.P.* At the present time, however, there appears to be a serious danger that discovery will not be completed unless defendant is presented with the prospect of harsher sanctions.

As a result of defendant's current failure to comply with discovery requests, plaintiff's counsel has spent 43.9 court related hours on this case, and he has incurred $232.24 in expenses.

## CONCLUSIONS OF LAW ON SANCTIONS

The court is presented with the question whether defendant is in contempt of its July 29, 1986, order.

The defendant is under a duty to produce for the plaintiff copies of the Southern Region Monthly Management Reports for every month after December 31, 1978. Defendant is also under a duty to reveal the qualifications of Mr. Wendell Saline. Defendant delegated these tasks to its agent and employee, Ms. Lesser.

■ The agent of a corporation who is designated to produce documents must furnish all information available to the corporation. This responsibility is not limited by Ms. Lesser's own personal knowledge of the situation. *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1210–11 (8th Cir.1973), cert. denied, *Selb Mfg. Co., Div. of Western, Inc. v. General Dynamics*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 4A Moore's Federal Practice ¶ 33.26, at 33–153, citing *Robbins v. Brockton Street Ry. Co.*, 180 Mass. 51, 61 N.E. 265 (1901), Holmes, J.

■ Ms. Lesser failed to make any effort to produce the information until July 29, 1986, when the court ordered such production. Her response at that time to the court's order was wholly inadequate, and her explanation of her inadequate response was pretextual. Her failure to provide the information required places Ms. Lesser, and through her, the defendant, in contempt of court.

■ Civil contempt is defined as arising from a wilful failure to comply with an order of court requiring a person to do or to refrain from doing a specific act or series of acts. Its purpose is remedial—that is, to compel obedience to the court's order, or failing that, to get some relief for the benefit of the opposing party. D.B. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. 183, 235 (1971); *Vanderkooi v. Echelbarger*, 250 Ind. 175, 235 N.E.2d 165 (1968); *Winter v. Crowley*, 245 Md. 313, 226 A.2d 304 (1967); *Godard v. Babson-Dow Mfg. Co.*, 319 Mass. 345, 65 N.E.2d 555 (1946); *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3rd Cir.1970).

■ Criminal contempt is a crime which consists in the obstruction of judicial duty generally resulting from an act done in the presence of the court directed against the dignity and authority of the court or judge acting judicially. The relief is punitive much as any other criminal sanction is punitive. D.B. Dobbs, *Contempt of Court, supra*, at 235; *Sullivan v. Sullivan*, 16 Ill.App.3d 549, 306 N.E.2d 604, 605 (1st Dist.1973).

■ The court is not concerned with its authority and dignity; the court *is* concerned with seeing that the plaintiff obtains the information ordered by the court and necessary for plaintiff to pursue his continuing remedies. This case presents a question of civil but not criminal contempt. *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 431, 31 S.Ct. 492, 55 L.Ed. 797 (1911); D.B. Dobbs, *Contempt of Court, supra*, at 235. The court is concerned solely with insuring that defendant comply with its July 29, 1986, order and has no desire to punish the defendant for its bad faith refusal to comply with that order. The remedy it seeks to impose is one designed to induce the defendant to do its duty, not to punish it for its past disobedience. *Southern Railway Company v. Lanham*, 403 F.2d 119 (5th Cir.1968); *Carbon Fuel Co. v. United Mine Workers Of Amer.*, 517 F.2d 1348 (4th Cir.1975); *International Business Machines Corp. v. United States*, 493 F.2d 112 (2nd Cir.1973); *Fox v. Capital Co.*, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936), Cardozo, J.

Plaintiff has suggested that the court remedy his injury resulting from the contempt of the defendant by barring the defendant from introducing any further evidence as to Mr. Saline's education, experience or other job qualifications on the issue of plaintiff's rightful place, at any later stage of this action. Such an order appears to be within the court's power. *Fed. R.Civ.P.* 37(b)(2)(B); *cf. Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958) [preclusive presumption to be used when party violates court order in bad faith]; *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 679 (11th Cir.1984). However, as such orders

have the tendency to preclude or postpone adjudication on the merits, the court is reluctant to grant the plaintiff's request at this time.

■ The need to compensate the plaintiff for his injuries resulting from the defendant's contempt can be avoided if the injury can be removed. The court thus faces the question of how best to persuade the defendant to obey its order. The difficulty the court is faced with is to fashion a remedy such that the defendant "holds the keys" to his own release from the contempt. *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902); *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Penfield Co. of California v. S.E.C.,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947).

■ Since defendant is a corporation and not a human being, it is not possible to imprison it until it complies with the court's order. Imposing a direct and unconditional fine might well punish the defendant, but it would not permit the defendant to "hold the keys" to the purging of its contempt. It would also fail to guarantee that the defendant complied with the plaintiff's discovery requests. *Carbon Fuel Co. v. United Mine Workers of Amer., supra.,* at 1350; *Southern Railway Company v. Lanham, supra.,* at 125.

In *International Business Machines Corp. v. United States, supra,* at 113–120, Chief Judge Edelstein, facing a similar problem, entered an opinion, findings, and order imposing a contingent, coercive fine of $150,000 per day until IBM complied with his discovery order. On review the Second Circuit rejected IBM's argument that this fine constituted a criminal contempt because of the character and magnitude of the order. Judge Oakes wrote for the panel: "We fail to see how the magnitude of such a sum can turn a civil contempt into a criminal one, any more than the sending of an individual to jail turns a civil contempt into criminal contempt." *Id.* at 116.

In *Fox v. Capital Co.,* 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936), Justice Cardozo reviewed an order by a district court finding a judgment debtor in contempt for refusing to submit to an examination in proceedings supplementary to judgment. The court fined the defendant $235,082.03, the amount then unpaid upon the judgment, with the proviso that, except for the costs of the proceeding, the fine would be remitted upon submission to the subpoena. Justice Cardozo found that "the contempt charged and adjudicated was not criminal, but civil; reparation to an obstructed creditor, not vindication of the public justice, was the purpose of the fine, and of the fine in all its parts." *Id.,* at 108, 57 S.Ct. at 59.

The court has considered both of these possible approaches and has decided to adopt that used by Judge Edelstein instead of that approved by Justice Cardozo. The court favors Edelstein's approach because the relief sought in this case by the plaintiff in the underlying action is primarily equitable, and therefore the determination of plaintiff's damages in dollars is difficult to measure.

The court will require the defendant to pay a fine of ten thousand dollars ($10,000.00) each day it continues to refuse to comply with the court's order. The defendant has assets of more than five billion dollars. This sum is hardly punitive. *International Business Machines Corporation v. United States, supra,* at 115–116. However, its effect may be enough to "concentrate the mind" of the defendant.

An apocryphal story illustrates the court's problem: A traveler in a rural area saw a plowman flogging a stubborn mule with a large stick. The traveler objected, expressing a fear that the mule would be injured and ought not to be punished for being stubborn. The plowman replied: "I'm not trying to hurt or punish him; I'm just trying to get his attention."

The means outlined here may not even yet get the attention of the defendant, but we will soon know.

If this effort fails to achieve the required effect, the court will again entertain the

plaintiff's request for an order to preclude the introduction of evidence, and will consider, as a further inducement, requiring a substantial payment.

\* \* \* \* \* \*

■ The immediate harm which the plaintiff has suffered from the defendant's failure to produce the discovery is what it costs the plaintiff to secure compliance with the court's orders.

Defendant has objected to plaintiff's request for attorney's fees "for matters other than drawing the order requested by the court." On September 11, 1986, the court said, "the plaintiff is entitled to fees and expenses for producing an order and I will give further thought to the question of sanctions." The court does not interpret this statement to restrict the plaintiff to only fees and expenses for producing a draft of a proposed order. *Fed.R.Civ.P.* 37(a)(4) requires the court to grant to the moving party "the reasonable expenses incurred in *obtaining* the order, including attorney's fees." The defendant has cited no authority which would preclude the application of that rule.

Plaintiff's counsel has spent a total of 43.9 hours in matters related to securing this discovery order, and he has incurred expenses of $232.24. The court finds that a fee of $175.00 per hour is reasonable given the skill and determination of the plaintiff's counsel acting alone against the efforts of a major New York law firm. Thus, plaintiff is entitled to a fee of $7,682.50.

\* \* \* \* \* \*

### MEMORANDUM OF DECISION AS TO PARTIAL SUMMARY JUDGMENT

■ On April 28, 1986, the court entered a partial final judgment ordering the defendant, *inter alia*, to offer Plaintiff the job of Southern Regional Casualty Underwriting Manager when it next became available. The defendant has notified the court that it cannot satisfy the court's judgment because defendant has abolished this position. The plaintiff has alleged that this position was not abolished at all but

was transformed into two new offices— that of Southern Regional Head and that of Mid-South Regional Head. Plaintiff asserts that this was done to avoid compliance with the court's reinstatement order. The plaintiff further asserts that either Mr. Wendell Saline, the present Southern Regional Head, or Mr. Emmett Morgan, Jr., the Mid-South Regional Head, currently occupies plaintiff's rightful place, as these two persons were instated in their jobs at about the same time Mr. Marvinney, the prior Southern Regional Casualty Underwriting Manager, left the defendant's employ in December, 1985.

After the plaintiff filed his motion for entry of partial judgment, the defendant filed an affidavit by Mr. Morgan. The Morgan affidavit raises issues of fact as to who should have been selected for Morgan's job. Entry of judgment without trial of those issues is therefore inappropriate.

With respect to the qualifications of Mr. Saline, it is much more difficult for the court to deny the entry of a judgment. Attempting to create an issue of fact for trial, the defendant filed the affidavits of Mr. Edward P. Sheridan, Mr. Saline, himself, Mr. Ray Vandenberg, and portions of the affidavit of Ms. Elaine Lesser. None of these affidavits contains competent evidence as to Mr. Saline's qualifications for the job of Southern Regional Head.

Mr. Sheridan's affidavit speaks to Mr. Saline's qualifications, but except for a statement that Mr. Saline worked in an unspecified capacity for the Chubb Corporation prior to being employed by the defendant, it is, so far as it is relevant, based entirely "upon information and belief." Because statements made "upon information and belief" are not within the requirements of Rule 56(e), *F.R.Civ.P.*, Sheridan's affidavit should be disregarded for purposes of this motion.

Mr. Saline himself submits an affidavit even more deficient than Sheridan's. In it, Mr. Saline speaks about the losses suffered by the Southern Region under Saline's management. He also details the abolition

of the position of Casualty Underwriting Manager to which the court ordered the plaintiff instated on April 28, 1986. But Saline offers no evidence as to his own qualifications.

Mr. Vandenberg's affidavit, which refers to an unsworn but "true" resume prepared for Mr. Saline by Messrs. Nordeman Grim, a firm of "headhunters," is simply hearsay within hearsay and without probative force.

With respect to Ms. Lesser's affidavit, she has no personal knowledge about Mr. Saline's qualifications. *See* findings of fact on sanctions, above.

The court finds it difficult to understand the defendant's near total incapacity to present competent evidence of Mr. Saline's qualifications. Since there is little question that the defendant possesses such evidence, a natural question arises whether such evidence would be adverse to the defendant's interests. It would be within the power of the court to bind the defendant to the minimal information it has so far supplied on the issue of Mr. Saline's qualifications. *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909).

For the time being, the court continues to hope for an adjudication on the facts. Meanwhile, action will be deferred on plaintiff's motion for partial summary judgment, insofar as it requests that the plaintiff be awarded the next vacancy in the head of the Southern region or of the Mid-South region of the defendant, and that plaintiff be awarded bonuses, salary and retirement benefits equivalent to those of officials who presently hold these positions.

▉ Plaintiff further moved for summary judgment that he be allowed to attend office staff meetings in Charlotte, that he be allowed to attend conferences and meetings with company officials which the Charlotte Branch Manager attends, and that he be given access to the management information available to the Charlotte Branch Manager, Southern Regional Head, and Mid-South Regional Head. Plaintiff was unlawfully demoted from Branch Manager in Charlotte to Underwriting Manager in Atlanta in April, 1979. In January, 1981, plaintiff was again unlawfully demoted to Major Lines Account Executive. Plaintiff's affidavit, filed July 22, 1986, to which defendant has not responded, shows that plaintiff's duties presently consist of visiting independent agents to obtain reports on their activities and handling the terminations of agents that the company is no longer using, which job is, for a person of plaintiff's capacity and experience, largely "routine paperwork."

Plaintiff is soliciting some major lines accounts but he is far removed from the flow of information which a branch manager needs in order effectively to carry out his duties. The prior judgment of this court, which has been affirmed by the Fourth Circuit, requires that defendant offer plaintiff the next vacancy in the office of Charlotte Branch Manager. Plaintiff needs to be moved back into the flow of information normally available to the Branch Manager in order to be prepared to undertake this job when it becomes available.

Since the court is, for the present, denying the motion for partial summary judgment insofar as it moves that the court determine that plaintiff should have been promoted to either Mid-South Regional Head or Southern Regional Head, it is not appropriate at this time to give plaintiff access to the management information available to the present incumbents in those jobs. However, since the court has ordered the plaintiff to be given the job of Charlotte Branch Officer when that job next becomes open, there appears to be no reason to deny the plaintiff the opportunity to inform himself adequately to exercise his future responsibilities in that job.

Therefore, defendant will be directed to allow the plaintiff to attend office staff meetings in Charlotte, to allow the plaintiff to attend all conferences and meetings with company officials at which the Charlotte branch manager is eligible to attend, and to give plaintiff access to all management in-

formation available to the Charlotte branch manager.

For much the same reasons that entitle plaintiff to the management information possessed by the Charlotte Branch Manager, the plaintiff is also entitled to attend meetings of the Carolina Insurance Managers Association. The defendant originally asserted that the by-laws of that association permitted the attendance of only one member from each insurance company. Subsequently, the defendant has informed the court by a letter of September 17, 1986, that it was mistaken in this interpretation and that the by-laws of the association provide that the Charlotte Branch Manager can designate plaintiff as one of his "assistants" to attend the meetings of that association. It therefore will be ordered that the defendant designate plaintiff as an "assistant" for meetings of the Carolina Insurance Managers Association and pay his reasonable expenses for those meetings.

The plaintiff, in his motion for partial summary judgment, also requests that the defendant "provide plaintiff office quarters equal to those of the Charlotte Branch Manager." The undisputed facts, based upon the July 22, 1986, affidavit of plaintiff which has not been challenged by defendant, are that until June 2, 1986, plaintiff had been relegated to a small, interior windowless cubicle office. On that day the defendant moved the plaintiff to an exterior office 171 square feet in area. The office of the branch manager is 284 square feet, or thereabout, in area. The furnishings in the branch manager's office are finer and more extensive than those in plaintiff's office. On July 3, 1986, the office next to plaintiff, 206 square feet in area, became vacant. Since June, plaintiff has requested that defendant move him into this office until an office equivalent to that of the branch manager can be provided. Defendant finally allowed plaintiff to move into this office several days after the hearing on the motion for partial summary judgment. In defendant's motion for relief from partial final judgment, filed September 10, 1986, defendant stated that it was presently planning office renovation, such that the plaintiff would have the same office as the Charlotte General Manager.

Defendant has not stated when this renovation will be accomplished. If defendant does construct the new office for plaintiff it should be substantially equal in size and furnishings, and reasonably near to, the branch manager's office. Presently, relief on this matter is premature and plaintiff's motion will therefore be denied.

Plaintiff also moves the court for an order that plaintiff recover of defendant a sum of money for defendant's failure to allow plaintiff to use a company car for personal business. Plaintiff has failed to present evidence sufficient to show his damages for this alleged deprivation. Accordingly, for the present, plaintiff's motion with respect to the company car will be denied.

These orders will be made without prejudice to the making of further appropriate orders upon further showing.

## ORDER ON PLAINTIFF'S MOTIONS FOR SANCTIONS AND FOR PARTIAL SUMMARY JUDGMENT

Based upon findings of fact and conclusions of law filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Defendant shall, by Monday, November 3, 1986:

(a) Cause a search to be made of all its various offices and places of storage (owned or otherwise), including computers, and including but not limited to its Home Office and all Southern Region and Mid-South Region Branch Offices for the missing Southern Region Monthly Management Reports, *i.e.,* "green books" (including comments) and produce for plaintiff the documents thereby discovered and file the affidavit of the manager of each office or place of storage, stating with particularity and upon personal knowledge, the steps he or she has taken to comply with this order;

(b) Deliver to plaintiff legible copies of the illegible green book pages previously produced [If defendant finds itself unable to deliver to plaintiff such legible copies, defendant shall deliver to plaintiff's counsel the original microfiche or other record of these green book pages so that plaintiff's counsel may procure his own copies of the green book pages if he chooses (at defendant's expense).];

(c) File the affidavit of Mr. Bruce Lerner, or the present head of defendant's business systems department, stating with particularity, and upon personal knowledge, the steps he or she has ordered and taken to produce legible copies from the microfiche originals; and

(d) File with the court the affidavit of Wendell Saline setting out his qualifications relevant to his selection as Southern Regional Head.

2. If by Monday, November 3, 1986, the defendant has failed to comply with paragraph 1, subparagraphs (a) through (d) of this order, defendant will be fined the sum of Ten Thousand Dollars ($10,000.00) for each day thereafter it remains in default. Each Monday thereafter, defendant shall deposit with the Clerk of this court, before 12:00 noon, the accrued $10,000 increments of the previous week. Defendant shall continue to make such deposits until this court enters an order finding that defendant has fully complied with paragraph 1, subparagraphs (a) through (d).

3. Defendant shall produce Wendell Saline for a deposition by plaintiff in the office of plaintiff's counsel at defendant's expense, and have Wendell Saline bring with him all documents in his possession, custody or control bearing in any way on his qualifications to have been selected as Southern Region Head.

4. Defendant shall pay plaintiff's counsel a fee of $7,682.50 and expenses of $232.24, for reasonable fees and costs described in counsel's September, 1986, fee petition.

5. Plaintiff's motion that plaintiff be awarded the next vacancy in the positions of the head of the Southern Region or of the Mid-South Region is DENIED without prejudice.

6. Plaintiff's motion that the defendant pay the plaintiff the salary and bonuses paid to the various listed officers of the defendant who plaintiff alleges occupy the positions which rightfully the plaintiff should occupy is DENIED without prejudice.

7. Plaintiff's motion that the defendant credit the plaintiff's various retirement plans such that each has the present value of the plans of the officers listed above is DENIED without prejudice.

8. Plaintiff's motion that the defendant allow the plaintiff to attend office staff meetings in Charlotte and allow the plaintiff to attend conferences and meetings with company officials which the Charlotte branch manager attends is ALLOWED.

9. Plaintiff's motion that the defendant allow the plaintiff to attend meetings of the Carolina Insurance Managers Association is ALLOWED.

10. Plaintiff's motion that the defendant give plaintiff access to the management information available to the Charlotte Branch Manager, to the Southern Regional Head, and to the Mid-South Regional Head is ALLOWED only with reference to the information available to the Charlotte Branch Manager. The remainder of the motion is DENIED without prejudice.

11. The court reserves judgment on plaintiff's motion that defendant provide the plaintiff with office quarters equal to those of the Charlotte Branch Manager.

12. Plaintiff's motion that the defendant pay the plaintiff the sum of $14,350.00 for the defendant's failure to allow the plaintiff to use a company car for personal business is DENIED without prejudice.