**CONSOLIDATION COAL COMPANY, a corporation, Plaintiff,**

v.

**LOCAL 1702, UNITED MINE WORKERS OF AMERICA, et al., Defendants.**

**Civ. A. No. 89–0070–C(K).**

United States District Court, N.D. West Virginia, Clarksburg Division.

June 27, 1989.

Robert M. Steptoe, Jr. and C. David Morrison, Clarksburg, W.Va. and Daniel L. Fassio, Consolidation Coal Co., Pittsburgh, Pa., for plaintiff.

Barbara E. Fleischauer, Fairmont, W.Va., for defendants.

## MEMORANDUM OPINION

KIDD, District Judge.

██ Pending is Consolidated Coal Company's ("Consol") motion for preliminary injunction, seeking to enjoin Local 1702, Local 1588, Local 4043, Local 1058, Local 9909, and Local 1501, United Mine Workers of America ("Locals") from engaging in work stoppages at Consol's mines represented by the respective Locals. On June 16, 1989, based upon the allegations contained in paragraph 18 of Consol's verified complaint, the Court entered a Temporary Restraining Order ("TRO"), enjoining said work stoppages and setting a preliminary injunctive hearing on June 21, 1989.[1]

On June 21, 1989, after first denying Consol's motion for continuance, the Court heard testimony on Consol's motion for

---

1. On June 19, 1989, Consol filed its motion for issuance of order to show cause and for civil contempt judgment alleging that the Locals "willfully failed and refused to obey the mandate of the said Temporary Restraining Order and willfully failed and refused to return to work." Said allegation was supported by affidavits attached to the motion. The testimony taken at the preliminary injunction hearing confirmed that the work stoppages continued at the mines represented by the respective Locals, in clear violation of the Court's TRO. As such, the Court certainly has the authority to issue the Show Cause Order and hold the Locals, as well as their members, in civil contempt if the Court finds they are in violation of its TRO. Even though the Court does not take lightly the apparent disregard of its TRO by the Locals, any compensatory fine it may impose as a civil contempt penalty pales in light of the potential civil liability of the Locals for the work stoppage. See Consolidation Coal Co. v. Local 1702, 709 F.2d 882 (4th Cir.1983). Furthermore, any fines assessed would be paid to the Clerk for the exclusive benefit of Consol and could be set-off against any damages Consol may receive in its breach of contract action. See Consolidation Coal Co. v. Local 1702, 683 F.2d 827 (4th Cir. 1982); Carbon Fuel Co. v. United Mine Workers of America, 517 F.2d 1348 (4th Cir.1975). As such, the Court sees no useful purpose at the present posture of this action to grant the show cause motion, even though Consol's remedy at law may not be totally adequate. Therefore, in light of its holding herein, the Court DENIES Consol's motion for issuance of order to show cause and for civil contempt judgment.

preliminary injunction. Said testimony continued into June 22, 1989, after which the Court heard oral argument and took the matter under advisement.

Upon consideration of said testimony, the argument of counsel and the record herein, the Court, for the purposes of ruling on this motion only, makes the following findings of fact:

1) Consol and the Locals are signatories to the National Bituminous Coal Wage Agreement of 1988 ("NBCWA") which was in full force and effect at all times material to this civil action. Article XXIII provides that the grievance procedure, including mandatory and binding arbitration, is the exclusive means of settling differences between Consol and the Locals "as to the meaning and application of [the NBCWA]," as to "matters not specifically mentioned in [the NBCWA]," and as to "any local trouble of any kind [that may] arise at the mine;"

2) Beginning at 12:01 a.m. on June 16, 1989, all of Consol's mines, represented by the respective Locals, experienced a work stoppage by the Locals' members, with said work stoppage continuing to this date;

3) Each of Consol's mines, at the time of the work stoppage, had local grievances pending between the respective Locals and Consol;

4) The local disputes presented at each of Consol's mines was not the underlying cause of the work stoppage nor precipitated the work stoppage; and

5) There is no specific clause in the NBCWA which controls the resolution of the underlying cause of the work stoppage. There was no clear evidence presented as to the underlying cause of the work stoppage except that it was not to compel Consol to concede an arbitrable issue.

## CONCLUSIONS OF LAW

In deciding the issue at hand, the Court starts with the basic premise that the Norris–LaGuardia Act, 29 U.S.C. § 104, forbids federal courts from issuing "any restraining order or temporary injunction in any case involving or growing out of any labor dispute." In *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court carved out an exception to the anti-injunction provision of the Norris–LaGuardia Act by permitting a federal court to order workers to return to work when the collective bargaining agreement contains a no-strike clause with mandatory binding arbitration so as to allow the arbitration process to proceed. It is this exception upon which Consol bases its motion.

Subsequently, in *Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Supreme Court defined the boundaries of the *Boys Market* exception, limiting it only to issues that are arbitrable.

> In *Buffalo Forge*, the Court ... held that the *Boy's Market* exception does not apply when only the question whether the strike violates the no-strike pledge, and not the dispute that precipitated the strike, is arbitrable under the parties' collective bargaining agreement.

*Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n.*, 457 U.S. 702, 709, 102 S.Ct. 2672, (1982) (footnote omitted), 73 L.Ed.2d 327. It is upon *Buffalo Forge* that the Locals rely in opposing injunctive relief.

The Court concludes that it is prohibited by *Buffalo Forge* from issuing the preliminary injunction enjoining the work stoppage. As stated in *Cedar Coal Co. v. United Mine Workers of America*, 560 F.2d 1153, 1170 (4th Cir.1977):

> [T]he central question to these cases seems to be: Is the object of the strike at hand to compel the company to concede an arbitrable issue?

There simply is no evidence that the object of the work stoppage was to compel Consol to do anything. There are local disputes at each of the mines affected. However, the Locals have always, over a substantial period of years, proceeded with the grievance procedures without resorting to a work stoppage. Furthermore, no witness for Consol testified that he had actual knowledge of the reason for the walk-out or that

there has been any demand on Consol by any of the Locals as to any issue which would bring an end to the work stoppage. On the other hand, the Locals' witnesses testified that the work stoppage had nothing to do with the local disputes at the respective mines.[2] Although it is unclear as to the exact nature of the underlying cause of the strike, it seems to be in the nature of a protest, not against Consol, but against the way the United Mine Workers of America ("UMWA") members and locals are being treated in other areas of the nation.[3]

Certainly, there is no specific clause in the NBCWA between Consol and the Locals which would control the resolution of this protest:

> If the underlying dispute is not subject to contractual grievance and arbitration proceedings, it is not arbitrable, and under *Buffalo Forge* the work stoppage cannot be enjoined pending arbitration. The work stoppage may still be prohibited by a general no-strike clause, but this must be decided initially by the arbitrator. The Supreme Court in *Buffalo Forge*, explicitly stated that a work stoppage cannot be enjoined during pendency of that arbitration.

*Hampton Roads, supra* at 285.[4] Therefore, the only clause of the NBCWA that may have been violated by the Locals in this dispute is the implied no-strike clause. *See Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). The question of its arbitrability and whether it prohibited the work stoppage are both for the arbitrator.

It is accordingly ORDERED as follows:

1) The TRO issued on June 16, 1989, is DISSOLVED;

2) Consol's motion for preliminary injunction seeking to enjoin the Locals from engaging in the work stoppage is DENIED;

3) The parties are to submit all present disputes to settlement and disposition in accordance with the applicable grievance and arbitration provision of the NBCWA; and

4) The bond heretofore posted by Consol is RELEASED.

The Clerk is directed to transmit certified copies of this Order to counsel of record herein.

**2.** There is conflicting testimony concerning people at the respective mine entrances on June 16, 1989, and various times thereafter, who have been characterized as "protesters" or "pickets," and whether there is in fact a "picket line." The Court need not decide these issues, having found that the underlying cause of the work stoppage could not be resolved by a specific clause in the NBCWA subject to grievance and arbitration proceedings therein. *Hampton Roads Shipping Ass'n v. International Longshoremen's Ass'n,* 631 F.2d 282 (4th Cir.1980).

**3.** Among the reasons testified for the work stoppage include UMWA members being jailed in Virginia without bail, being treated abusively by state police in Virginia, unjust court systems, and excessive fines being levied against the UMWA which will bankrupt it and cause it to be nonexistent. As to the last reason, the Locals should be more concerned about their own financial future. The potential civil liability, as mentioned previously, may very well bankrupt the Locals. In fact, Local 1702 is still paying off a civil judgment to Consol which resulted from a work stoppage in the early 1980's. It certainly would behoove the Locals to get their members back to work so as to at least limit their potential civil liability down the road of this litigation. Of course, the Court has no opinion as to this matter, it being one first for the arbitrator.

**4.** In its memorandum in support of issuance of preliminary injunction, "Consol urges this Court to reject the rule of *Buffalo Forge* as being, in the words of former Associate Justice Powell, a 'method of analysis artificial and unprincipled.'" The Court is sympathetic with Consol's position in light of the absurd results that *Buffalo Forge* dictates in this civil action. Here, Consol has done absolutely nothing to precipitate the work stoppage, yet the Court is without jurisdiction to compel the miners back to work. On the other hand, if Consol's acts directly precipitated the work stoppage, the Court may compel the miners to go back to work. However, it is the function of this Court to take testimony, make findings of fact, and apply the law to the facts. *Buffalo Forge* is clearly the law as stated by the United States Supreme Court and followed by the United States Court of Appeals for the Fourth Circuit; it is the duty of this Court to follow it.