905 F.2d 1530
 15 U.S.P.Q.2d 1800
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
OMEGA WORLD TRAVEL, INC., Plaintiff-Appellant,
v.
OMEGA TRAVEL AND SHIPPING AGENCIES, INC., Defendant-Appellee,
and
Omega Travel, Inc., Defendant.
OMEGA WORLD TRAVEL, INC., Plaintiff-Appellee,
v.
OMEGA TRAVEL AND SHIPPING AGENCIES, INC., Defendant-Appellant,
and
Omega Travel, Inc., Defendant.
 Nos. 89-3268, 890-3282.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1990.
Decided May 10, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-88-166-R)
 Barry Roberts, Ulmer & Berne, Washington, D.C., for appellant.
 John F. Rick, Maloney, Yeatts & Barr, P.C., Richmond, Va. (Argued), for appellees. Michele A. Haley, Maloney, Yeatts & Barr, P.C., Richmond, Va., on brief.
 E.D.Va., 710 F.Supp. 169.
 AFFIRMED.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from an Order holding Omega World Travel, Inc. ("World") in civil contempt for violating a Consent Order previously entered by the court below in settlement of a trademark infringement action originally brought by World against Omega Travel & Shipping Agencies, Inc. ("Travel"). On appeal, World argues that: (1) it was in substantial compliance with the Consent Order; (2) the sanctions, premised on criminal rather than civil contempt, were imposed without regard to due process; and (3) the trial court erred in awarding monetary damages in the absence of demonstrable losses. Travel cross-appeals the district court's denial of attorneys' fees. Because no error was committed by the lower court, the judgment below is hereby affirmed in all respects.
 
 I.
 
 2
 On March 10, 1988, World brought a trademark infringement and unfair competition action against Travel. One week before the scheduled start of trial, the parties joined in a consent decree, which was entered by the lower court on June 8, 1988 (the "Consent Order"). The Consent Order limited both parties' use of the word "Omega" in the advertising and marketing of their respective travel services in the greater Richmond, Virginia, metropolitan area. On February 15, 1989, Travel filed a Motion for Order to Show Cause, alleging that World's advertisement in the Atlantic Bell System's "Yellow Pages" for the "Greater Richmond" area violated the Consent Order, and requesting that World be held in civil contempt.
 
 
 3
 On March 14, 1989, the court conducted an evidentiary hearing on the issue of World's compliance with the Consent Order. Following the hearing, the district court found World in violation of the third numbered paragraph of the Consent Order which provides that World is:
 
 
 4
 permanently ENJOINED AND RESTRAINED from using, in connection with sale or provision of travel services, in the same cities and counties named in the preceding paragraph, any service marks, trade names, trademarks, or other name containing the word "Omega" and identifying its services, other than all of the words in its full corporate name as of the date of this Order, except that it may omit the word "Inc." from such identification. The words "Omega" and "World" shall be in the same typeface and size.
 
 
 5
 In the challenged advertisement, the word "Omega" was approximately four times larger than the word "World." Accordingly, on April 6, 1989, the court entered an order finding World in civil contempt, imposing a fine of $5,000 payable directly to Travel, and requiring World to install a recorded message for the telephone number listed in World's advertisement.[1] World now appeals that decision.
 
 II.
 
 6
 A district court's finding that a party is in violation of one of its orders may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). There is no evidence of clear error in the record below. The third numbered paragraph of the Consent Order explicitly states: "The words 'Omega' and 'World' shall be in the same typeface and size." In World's Yellow Pages advertisement, the word "Omega" was printed significantly larger than the word "World." Moreover, the word "Omega" was printed in a disproportionately large and conspicuous typeface.
 
 
 7
 In its defense, World asserts that its advertisement was permissible under the fourth numbered paragraph of the Consent Order. That paragraph provides:
 
 
 8
 The prohibitions in paragraph 3 above shall not apply to advertising appearing in the specified geographic areas in nationally circulated print media, or in other print media published outside of the specified areas and not primarily distributed in those areas.
 
 
 9
 By its own terms, this exception does not apply to the advertisement at issue in this case. First, the advertisement appeared in the Yellow Pages for the "Greater Richmond" area, the region expressly covered by the Consent Order. Second, that particular phone directory is circulated within and intended for a specific region, the Richmond metropolitan area, and in no way constitutes a national publication. There is no doubt that World's advertisement is in violation of the Consent Order.
 
 
 10
 As an alternative defense, World claims that it took reasonable steps to comply with the Consent Order after the filing of this enforcement action, and that its violation was neither intentional nor willful. Therefore, World maintains that it has made a good faith effort to satisfy its obligations to Travel, and that it was in substantial compliance with the Consent Order. The district court, however, expressly found "no evidence that World made a good faith attempt to comply with the order," that "various World marketing devices other than the offending ad were also in violation of the decree as recently as the week before the hearing,"[2] that "World certainly did not take reasonable steps" to comply with the Consent Order, and that "World continued to make almost no effort, much less a good faith effort to comply with the decree, even after entry of the show cause order." The record supports these findings. Even if this court were to conclude that the trial court's findings on this point were clearly erroneous as a matter of law, "good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order." McLean v. Central States S & S Areas Pension Fund, 762 F.2d 1204, 1210 (4th Cir.1985).
 
 III.
 
 11
 As a general matter, contempt proceedings are neither entirely civil nor altogether criminal in nature, but rather can partake of the characteristics of both. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797, 806 (1911).[3] Most frequently, the distinction between civil and criminal contempt depends on the actions of the contemnor and the nature of the sanctions imposed by the court. For example, the refusal to do an act commanded by a court ordinarily constitutes civil contempt, while the doing of a forbidden act traditionally comprises criminal contempt. Id. Moreover, it is civil contempt if the punishment is remedial, coercive and for the benefit of the complainant, but criminal contempt if the sentence is punitive and primarily intended to vindicate the authority of the court. Id.; see also Richmond Black Police Officers Assn. v. City of Richmond, 548 F.2d 123, 125-26 (4th Cir.1977); Carbon Fuel Co. v. United Mine Workers of America, 517 F.2d 1348, 1349 (4th Cir.1975); C. Wright & A. Miller, 11 Federal Practice & Procedure Sec. 2960, at 583-98 (1973); G. Wright, et al., Civil and Criminal Contempt in the Federal Courts, 17 F.R.D. 167 (1955) (all discussing the salient differences between civil and criminal contempt).[4]
 
 
 12
 In Consolidation Coal Co. v. Local 1702, United Mineworkers of America, this court elaborated upon the differences between civil and criminal contempt, stating:
 
 
 13
 We recognize at the outset that the gist of criminal contempt is to punish past behavior, while the essence of civil contempt is to coerce future behavior. To determine whether a contempt order was civil or criminal we must decide whether the contempt order was both forward-looking in application and compensatory.
 
 
 14
 683 F.2d 827, 830 (4th Cir.1982). The court went on to hold that a contempt order was civil in nature if the punishment imposed was forward-looking and compensatory. Id.
 
 
 15
 Based on the standard enunciated in Consolidation Coal, it is clear that the two sanctions imposed in this case were based on civil contempt. First, the recorded telephone message which the trial court required World to install for the phone number listed in its disputed advertisement was most certainly a prospective and corrective punishment. There is ample language in the district court's opinion to the effect that this special requirement was intended as "a remedy," a method of "coercing future compliance" by the contemnor, and a means of "compensating" the complainant. Second, the monetary damages awarded in this case also were intended by the lower court to be compensatory. In its opinion, the trial court stated that "the payover to Travel of the proceeds of a fine against World will work, in part, toward accomplishing the dual objectives of compensating Travel for its losses and denying World the benefits of its wrongdoing."
 
 
 16
 Moreover, the court below ordered that, given "the equities of this case," the $5,000 fine be paid directly to Travel. In Carbon Fuel Co., this court held that a punishment was criminal in nature if the court imposing monetary sanctions required the contemnor to pay the fine to the clerk of the court, and indicated that a punishment was civil in nature if the court ordered the contemnor to pay the fine directly to the complainant. 517 F.2d at 1349-50. Finally, it should be noted that the district court's order expressly held Travel in "civil contempt of the consent decree." For these reasons, it is quite apparent that the relief ordered by the district court was civil and not criminal in character. Accordingly, this court need not address World's due process claims, which are applicable only in the criminal contempt context.
 
 IV.
 
 17
 A district court has broad discretion to frame remedies to fit violations of its orders. Accordingly, the imposition of contempt sanctions by a district court will not be disturbed on appeal absent clear error. Consolidation Coal Co., 683 F.2d at 832; Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 513 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).
 
 
 18
 On appeal, World argues that the district court erred in awarding a $5,000 fine payable to Travel, because Travel is unable to show that it sustained quantifiable damages as a consequence of World's non-conforming advertisement. In support of its argument, World cites to United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In that case, the Supreme Court stated:
 
 
 19
 Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss.... But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised.
 
 
 20
 330 U.S. at 303-04, 67 S.Ct. at 701, 91 L.Ed. at 918. Based on this language, World asserts that a monetary fine, if intended to compensate Travel, may be imposed only if Travel can show actual loss. Travel honestly admits, and the lower court expressly found, that it is unable to quantify the harm suffered as a result of World's Consent Order violation.
 
 
 21
 We do not believe that a district court's hands should be tied in unusual cases such as the one sub judice. The district court had no suitable means to compel World to comply with the Consent Order, because the non-conforming Yellow Pages advertisement already had been printed and placed into general circulation. In its opinion, the lower court stated:
 
 
 22
 With respect to coercing future compliance, the only continuing violation is the Yellow Pages ad. However, since the Court obviously has no control over the dissemination and use of the public phone directories, ordering further compliance as a remedy for the Yellow Pages violation is not an option.
 
 
 23
 Thus, the challenged advertisement could not be revoked or amended. Moreover, the court below found to its satisfaction "that current and potential clients of Travel have been confused by the World Yellow Pages ad. Some callers evidently have done business with World whereas their original intent had been to deal with Travel." We believe that it was well within the district court's equitable powers to compensate Travel for the obvious yet non-quantifiable harm stemming from World's violation. As Travel argues in its brief, to hold otherwise would hamper the courts' contempt powers in cases involving trademark or patent infringement where the damage suffered involves the good will and business reputation of the complainant, the tarnishment of which cannot be measured readily by the actual dollar loss sustained.
 
 V.
 
 24
 The award or denial of attorneys' fees in civil contempt actions is within the discretion of the trial court, whose decision on such matters must be sustained on appeal absent an abuse of that discretion. Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719, 731 (1923); Folk v. Wallace Business Forms, Inc., 394 F.2d 240, 243 (4th Cir.1968). In exercising that discretion, a court may assess attorneys' fees as part of the fine to be levied on the contemnor for the "willful disobedience" of a court order. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141, 154 (1975); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 479 (1967). In Wright v. Jackson, 522 F.2d 955, 958 (4th Cir.1975), this court indicated that a contemnor's refusal to comply with a court order must rise to the level of obstinacy, obduracy or recalcitrance to satisfy the "willful disobedience" standard enunciated by the Supreme Court in Alyeska and Fleischmann. The district court expressly found that World's conduct was neither obstinate nor recalcitrant, and nothing in the record supports a contrary determination. Consequently, the court below did not abuse its discretion in refusing to award costs and attorneys' fees in this case.
 
 VI.
 
 25
 Based on the foregoing discussion, the decision of the district court is hereby
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The message, which was specified by the court, reads: "You have reached the former phone number of Omega World Travel, Inc. To be certain that you contact the particular travel services firm you seek, please be advised that two travel service firms operating in the Richmond area have commercial names beginning with the word 'Omega.' One is Omega Travel, Inc.; the other is Omega World Travel, Inc. You should ascertain from other sources the identity of the particular firm you wish to speak with. Omega Travel, Inc. may be contacted at ________. Omega World Travel, Inc. may be contacted at ________."
 
 
 [2]
 The district court indicated that "[t]he other offending items included a sign on the front of World's Richmond office as well as ticket jackets and travel itineraries regularly given to World's clients. The violations by these items also arise from different typeface and size of the word 'Omega' relative to the accompanying words."
 
 
 [3]
 Gompers is the leading case analyzing the differences between civil and criminal contempt
 
 
 [4]
 It may be of interest to note that the distinction between civil and criminal contempt is applied most often in two discrete types of cases. In the first type of case, a party seeks to characterize a contempt order as being civil in nature in order to challenge a court's appellate jurisdiction. In most cases, a civil contempt order is not a final appealable decision within the meaning of 28 U.S.C. Sec. 1291 because it is inextricably entwined in the underlying action. See, e.g., Consolidation Coal Co. v. Local 1702, United Mineworkers of America, 683 F.2d 827, 830 & n. 3 (4th Cir.1982). In this case, the contempt action was wholly separate from the trademark infringement suit which gave rise to the Consent Order. Consequently, the trial court's contempt Order is ripe for review. In the second type of case, a party such as World wishes to characterize a contempt order as being criminal in nature in order to challenge its imposition because of procedural violations. See, e.g., Carbon Fuel Co., 517 F.2d at 1349 & n. 1; United States v. Marx, 553 F.2d 874, 876 (4th Cir.1977) (holding that mens rea is an essential element of criminal contempt); Richmond Black Police Officers Assn., 548 F.2d at 126-29 (discussing the procedural elements of notice, trial by jury, right to counsel and sufficiency of the evidence)